### STATE *vs.* EDWARD M. SMITH.

### Hancock.   Decided February 15, 1878.

#### *Trial.*

The provisions of R. S., c. 106, § 8, which requires that venires for grand jurors, to serve at the supreme judicial court, shall be issued forty days at least before the second Monday of September annually, is directory merely to the clerk of the court in the matter of time, and not a limitation on his power to issue.

A venire issued after the expiration of the time named in the statute, but in season for service by the proper officer in accordance with the provisions of the statute, is valid.

The attorney general has the power to enter a *nolle prosequi*, to the whole or any part of an indictment, without the consent of the prisoner, either before a jury is empaneled or after verdict. If after verdict, and the indictment is sufficient, it will be a bar to any new indictment for the same offense.

Since the act of 1876, c. 114, which reduces the punishment for murder in the first degree from death to imprisonment for life, in an indictment for murder, the prisoner has the right to challenge but two jurors peremptorily. The right of challenge is regulated by the grade of punishment by R. S., c. 134, § 12.

ON EXCEPTIONS AND MOTIONS.

INDICTMENT for murder, found and tried at the April term, 1877, Peters, J., presiding.

The indictment as found by the grand jury contained two counts, the first of which was of the form following:

"The jurors for the said state upon their oath present, that Edward M. Smith of Bucksport, in the county of Hancock aforesaid, on the thirteenth day of October, in the year of our Lord one thousand eight hundred and seventy-six, at Bucksport in said county of Hancock, with force and arms in and upon the body of one Melissa F. Thayer, feloniously, willfully and of his malice aforethought, did make an assault, and her the said Melissa F. Thayer, then and there feloniously, willfully and of his malice aforethought, did kill and murder, against the peace of the said state, and contrary to the form of the statute in such case made and provided."

The second count was of similar purport differing principally in the name of the person murdered, which was stated as Melissa F. Thayer, otherwise called Lizzie F. Thayer.

To this count the attorney general entered a *nolle prosequi,* and went to trial on the first count.

The jury returned a verdict of guilty of murder in the first degree; and the counsel for the prisoner filed the following bill of exceptions:

"The prisoner's counsel on the first day of the term claimed the right to challenge the grand jury, which challenge was then submitted, contained in the transcript of the reporter's notes annexed hereto. The court overruled said challenge.

"The prisoner when arraigned, filed a plea in abatement to the indictment. The state demurred thereto. The demurrer was joined. Thereupon the court sustained the demurrer and overruled the plea, and ordered that the prisoner plead further. The indictment, plea, demurrer and joinder, are a part of these exceptions.

"The prisoner then demurred specially to the indictment. The demurrer was joined by the state. A decision was reserved until the court came in after an adjournment over noon, and before any ruling was made, the counsel for the state moved for leave to withdraw the joinder, stating their purpose to be to enter a *nolle prosequi* to some portion of the indictment, which motion was granted,

the counsel for the prisoner objecting thereto, and claiming that the demurrer should be passed upon by the judgment of the court. Thereupon the attorney for the state, under such leave, withdrew the joinder, and then with leave of court entered a *nolle prosequi* as to the second count in the indictment. Permission was then offered by the court to the counsel for the prisoner, to withdraw the demurrer; if he desired to do so. Not being done, the state's attorney again joined the demurrer; the court overruled it and adjudged the indictment good and ordered the prisoner to plead over. Whereupon the prisoner without objection was arraigned anew upon the indictment, omitting the second count, and he pleaded not guilty thereto, and was tried upon the first count therein, and found by the jury guilty of murder in the first degree. No written order or declaration of *nolle prosequi* was signed and filed by the attorney for the state, but in open court he directed the clerk to enter the *nolle prosequi* as to the second count upon the docket, which was accordingly done. The demurrer and joinders are a part of the case. The prisoner, when the jury were being empaneled, claimed the right to challenge jurors peremptorily as provided for the trial of capital cases, but the court ruled that such challenge would not exceed the number of two, a jury being drawn from the whole number of jurors in attendance not excused for cause, and when during the drawing, the prisoner peremptorily (but not for cause) challenged a third juryman, having previously exercised such peremptory challenge as to two other jurors, who were set aside, such third challenge was not allowed, and the juror called was sworn and placed on the panel.

"The presiding judge, in charging the jury said:

"A word or two as to the different classes of *witnesses* who have testified. How far shall the testimony of the accused be accepted; he can testify in his behalf; but he is a party accused of a monstrous crime. If he is innocent, of course you can believe him. But you must consider if he is guilty, whether it would not be too much to expect of human nature, that he would tell the truth when falsehood would be more likely to screen him from conviction. Therefore testimony that amounts upon the part of the prisoner, in such an offense as this, to merely a denial, you will judge whether it would amount to much or not.

"Still you have a chance to see and hear him, and obtain impressions from his appearance one way or the other. And he has the opportunity to make explanations, and bear the tests of examination; and truth if spoken may have its weight, coming from any source. It is for you to decide whether you will give any weight to his testimony, either for or against him, and if so, how much.

" To his wife, brother and sister, what credit should be given, on account of their relation to the prisoner? You must bear in mind, gentlemen, that the tie between that class of witnesses and the prisoner is a natural one; that their interest for the prisoner in his peril must be of the strongest kind; that these witnesses are under a tremendous temptation to exaggeration, coloring and falsehood; that in this case it would be an easy departure from the facts, as claimed even by the state, for the wife and sister to date the coming of the husband and brother at an earlier hour than he came.

"Still they may tell the truth, and you may believe all they say, or not a word of it, just as you please, according to your honest convictions as to its truthfulness. Much must depend upon the naturalness and probability of their story, and whether corroborated or not by other proof and the circumstances of the case. But the amount of weight to be attached to their testimony is entirely a matter for you, with which I, or any opinion of mine, can have nothing to do. And this later remark applies to all the testimony in the case from the beginning to the end."

After verdict, the prisoner filed a motion in arrest, to be copied, which was overruled by the court.

A summary of the case and the positions of counsel appear in the opinion.

*H. D. Hadlock,* for the prisoner, contended that R. S., c. 106, § 8, naming the time before which venires should issue, was imperative and not merely directory.

*L. A. Emery,* attorney general, for the state, contended that § 8 was directory and not imperative.

LIBBEY, J. The prisoner was indicted for murder, and was con-

victed of murder in the first degree. Several questions are raised by his exceptions.

I. He raises the question of the sufficiency and legality of the grand jury by whom the indictment was found. On the first day of the term he interposed a challenge to the array, and after the indictment was found and returned into court he presented a plea in abatement which was demurred to, and the demurrer sustained. In both the challenge and the plea the objection presented and relied upon is, that the venires, by virtue of which the grand jurors were drawn, were not issued forty days before the second Monday of September, but on the thirtieth day of August preceding. The challenge to the array was verbal. It does not appear that any record was made of it. While we do not consider such a challenge sufficient, still as it was understood by the court and the counsel at the time it was made that it should be treated as if made in writing, and as the same question is presented by the plea in abatement, it will be considered as if properly before the court.

R. S., c. 106, § 7, makes it the duty of the clerk of the courts to issue venires to the constables of towns from which jurors are to be drawn, for the draft of grand and traverse jurors. By § 8, " venires for grand jurors to serve at the supreme judicial court, shall be issued forty days at least before the second Monday of September annually; and they shall serve at each term for the transaction of criminal business during the year." The counsel for the prisoner claims that this statute requirement is imperative, and that a venire issued by the clerk after the expiration of forty days before the second Monday of September is void. On the other hand, it is claimed by the attorney general that this statute, so far as it relates to the time when the venire shall be issued, is directory merely, and that a venire issued after the time named in the statute, and in season to be executed before the second Monday of September, is valid.

In general where a statute imposes upon a public officer the duty of performing some act relating to the interests of the public, and fixes a time for the doing of such act, the requirement as to time is to be regarded as directory, and not a limitation of the

exercise of the power, unless it contain some negative words, deny-ing the exercise of the power after the time named; or from the character of the act to be performed, the manner of its perform-ance, or its effect upon public interests or private rights, it must be presumed that the legislature had in contemplation that the act had better not be performed at all than be performed at any other time than that named.

In *Pond* v. *Negus*, 3 Mass. 230, the question involved was the validity of the assessment of a tax voted by a school-district. The statute required the assessors to assess the tax in thirty days from the time the vote was certified to them. It was not assessed till after that time. Parsons, C. J., in delivering the opinion of the court says: "And although the assessors are directed to assess the tax within thirty days after the certificate, yet there are no negative words restraining them from making the assessment after-wards; and accidents might happen which would defeat the authority if it could not be exercised after the expiration of thirty days. The naming the time for the assessment must therefore be considered as directory to the assessors and not as a limitation of their authority." The same principle is affirmed in *Torrey* v. *Millbury*, 21 Pick. 64.

In *The People* v. *Allen*, 6 Wend. 486, the statute under con-sideration declared that, "the commanding officer of each brigade of infantry shall, on or before the first day of June in each year, appoint a brigade court martial." The appointment was made in July. It was held valid. Marcy, J., in delivering the opinion of the court says: "The general rule is, that where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered as directory merely, unless the nature of the act to be performed or the language used by the legislature, show that the designation of the time was intended as a limitation of the power of the officer. . . . . So it may be said of this case, that as there is nothing in the nature of the power showing that it might not be as effect-ually exercised after the first day of June as before, and as the act giving it contains no prohibition to exercise it after that period, the naming that day was a mere direction to the officer in rela-

tion to the manner of executin g his duty. There is nothing in the nature of the power given, or in the manner of giving it, that justifies the inference that the time was mentioned as a limitation."

This rule of construction has been approved in New York in the following cases: *Marchant* v. *Langworthy*, 6 Hill, 646. *Striker* v. *Kelly*, 7 Hill. 9. *People* v. *Cook*, 8 N. Y. 67. *Cunningham* v. *Cassidy*, 17 N. Y. 276. *Matter of the Empire City Bank*, 18 N. Y. 199.

In *Colt* v. *Ives*, 12 Conn. 243, the question before the court was the legality of the selection of the jury. The statute required that they should be chosen on the first Monday of July. They were not chosen till the 8th of August. The court held that the duty which was imposed to select the jury was imperative; but that the time fixed for the selection was directory; and that the selection was valid. In discussing the question the court say: " Where the object contemplated by the legislature could not be carried into effect by another construction, there the time prescribed must be considered as imperative. But where there is nothing indicating that the exact time was essential it should be considered as directory." "There is nothing in the nature of the power given, or in the manner of giving it, that justifies the inference that the time was intended as a limitation."

In *Johnson* v. *State*, 33 Miss. 363, the statute under consideration required that grand jurors "shall be summoned at least five days before the first day of the court at which their attendance is required." It was held to be directory to the sheriff, and that grand jurors summoned less than five days before the first day of the court were legally qualified.

In *State* v. *Lean*, 9 Wis. 279, the court declare the rule of construction as follows: "That when there is no substantial reason why the thing to be done might not as well be done after the time prescribed as before; no presumption that by allowing it to be so done it may work an injury or wrong; nothing in the act itself, or in other acts relating to the same subject matter, indicating that the legislature did not intend that it should rather be done after the time prescribed than not be done at all, then the courts assume that the intent was, that, if not done within the time prescribed it might be done afterwards."

In Illinois, the same principle is affirmed. *Wheeler* v. *Chicago,* 24 Ill. 108.

The statute under consideration contains no negative words limiting the power of the clerk of the courts to perform the duty imposed upon him to the time named. There is nothing in the nature of the duty to be performed, in the manner of its performance, or in its effect upon public interests or private rights showing that the legislature intended that, if not performed within the time prescribed, it should not be performed at all. The statute was first enacted in 1821. The duty it imposes upon the clerk is one of public concern. Its performance is essential to the due administration of justice. If the construction claimed by the counsel for the prisoner is correct, then, prior to 1860, if the clerk for any cause failed to issue the venires within the time prescribed, there could be no legal grand jury for the year. The court had no power to order a grand jury to be drawn. *State* v. *Symonds,* 36 Maine, 128. It cannot be presumed that the legislature contemplated such consequences.

Other provisions of the statute tend to support the construction claimed by the attorney general. Section nine provides that the sheriff, on receiving such venires, shall immediately send them to the constables of the towns where directed; and each constable, on receipt thereof, shall notify the inhabitants of the town, &c. But only four days notice of the meeting is required, and the meeting is not required to be held more than six days before the session of the court. If the sheriff should not immediately send the venires to the constables, or the constables, on receipt thereof, should not give notice of the meeting, still if the constables receive the venires and give seasonable notice, so that the draft is had within the time prescribed, it would not be contended that the delay on the part of the sheriff or constable would invalidate the draft.

Again, section eighteen provides that, if the clerk of the court, or sheriff, neglects to perform his duties so as to prevent a compliance with any of the provisions of this chapter, he shall be fined, &c. The penalty is not imposed on the clerk for not issuing the venires forty days before the second Monday of September, but for such neglect of his duty as will prevent a compliance with the provisions of the chapter.

The only reason which we can discover for the requirement that the venires shall be issued forty days at least before the second Monday of September is, that the officers whose duty it is to draw a grand jury, shall have sufficient time in which to comply with the provisions of the statute in making the draft. The object of the statute is to secure the attendance of a grand jury, duly drawn. The venire sets in motion the machinery of the law to accomplish that result. If it is received by the constable in season for service in accordance with the provisions of the statute, and is duly served and returned by him, we do not perceive why the object of the statute is not as effectually accomplished as if he had received it on the day named in the statute.

We feel clear that the time named in the statute for issuing the venires is directory merely, and not a limitation on the exercise of the power.

This construction renders it unnecessary to consider the effect of the act of 1877, c. 156. If, however, there was an irregularity in issuing the venires, we see no reason why it is not cured by that act. The indictment was found after the act took effect. It in terms validates it unless it shall appear to the court that the prisoner has been or may be, injured by the irregularity complained of. There is no suggestion that the prisoner was in any way injured by it. But it is contended by his counsel that this act is in violation of article 1, § 7, of the constitution of this state, which provides that "The legislature shall provide by law a suitable and impartial mode of selecting juries, and their usual number and unanimity in indictments and convictions, shall be held indispensable." The act of 1877 is a general law. It becomes a part of the law provided by the legislature as a suitable and impartial mode of selecting juries. It is not claimed that its provisions are not suitable and impartial as applied to the subject matter affected by them. We see nothing in the act in conflict with this clause of the constitution. This point is fully covered by *Commonwealth* v. *Brown*, 121 Mass. 69.

II. The indictment, as returned by the grand jury, contained two counts. Before pleading to the indictment the prisoner filed a special demurrer to it, specifying as cause, that it contained

two counts setting out the same offense. The demurrer was joined but before the court ruled upon the demurrer, on motion of the attorney general, he was permitted by the court to withdraw the joinder to the demurrer; and he then, under special leave of court, entered a *nolle prosequi* as to the second count in the indictment. This was against the objection of the prisoner. The demurrer was then joined and overruled.

It is well settled that the attorney general may enter a *nolle prosequi* to the whole or any part of an indictment, against the objection of the respondent either before a jury is empaneled or after verdict. If entered after verdict, and the indictment is sufficient, the verdict will be a bar to any new indictment for the same offense. It may be entered at any time pending a plea in abatement, demurrer, or motion in arrest of judgment. If the indictment was insufficient for the cause specified, the objection was removed by the *nolle prosequi*. *Commonwealth* v. *Tuck*, 20 Pick. 356. *Same* v. *Cain*, 102 Mass. 487. *Same* v. *Holmes*, 103 Mass. 440. *State* v. *Pillsbury*, 47 Maine, 449.

The presiding judge had the power to permit the withdrawal of the joinder to the demurrer. He might permit it or deny it in the exercise of his discretion. To the exercise of his discretion exceptions do not lie.

III. While the jury were being empaneled, the prisoner claimed the right to challenge, peremptorily, ten jurors, as in capital cases. This claim was denied, and he was permitted to challenge peremptorily two only. We think this ruling was correct. By R. S., c. 134, § 12, a person indicted for an offense punishable with death, has the right to challenge peremptorily ten jurors. By § 20, in all indictments for other offenses, the respondent is entitled to but two peremptory challenges. By the act of 1876, c. 114, the crime of murder is not punishable with death, but with imprisonment for life only. By the statute the right of challenge is regulated by the grade of punishment. The legislature by reducing the punishment for murder from death to imprisonment for life, has reduced the right of challenge of the prisoner from ten peremptory challenges to two. If it is desirable that in indictments for murder the prisoner should have the right to ten peremptory

challenges, it is a matter for the consideration of the legislature. The language of the statute·is too clear to be disregarded by the court.

IV. Exception is taken to the charge of the presiding judge to the jury on the ground that he expressed an opinion on an issue of fact upon which they were to pass. The charge is not subject to that objection. The presiding judge very properly called the attention of the jury to certain rules and principles proper for their consideration in determining the credibility of the witnesses, and the weight which they would give their testimony. After doing so, he told the jury that the amount of weight to be given to the testimony was entirely for them, with which he, or any opinion of his, had nothing to do. There is nothing in the charge that can be construed as the expression of an opinion upon any issue of fact before the jury.

The motion in arrest of judgment presents no point not already considered.                              *Exceptions overruled.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.