THOMAS J. TULLY, Administrator of Henry Tully, deceased, *vs.* THE PHILADELPHIA, WILMINGTON & BALTIMORE RAILROAD COMPANY. *

*Case—Corporations—Personal Injuries—Negligence—Trespassers —Infants—Licensees—Gross Negligence—Damages —Exemplary Damages.*

1.   Where the negligence of each party is operative at the time of the accident, no action can be sustained.  But if the negligence of the defendant is the proximate cause of the accident, although the deceased may be guilty of some negligence, it would not be contributory negligence; for the plaintiff may recover for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's failure, after becoming aware of the plaintiff's danger, to use ordinary care to avoid the injury.

2.   Where persons are using a permissive way without any invitation of the railroad company, and only upon the permission or silent acquiescence of the company, the rule of law is the same as in the case of mere trespassers,—that the company will be held liable only for such injuries as arise from its gross negligence or wanton disregard of human life.  In such cases the user crosses the railroad at his own risk, and subject to all the perils of the way.  A naked license, or permission to enter upon one's premises, will not create a duty or impose an obligation on the part of the owner towards the licensee, to provide against danger or accident,

3.   Even toward trespassers railroad companies must exercise such care and diligence as a reasonably prudent man would ordinarily use under similar circum-

* NOTE.—Re-trial.  See also *2 Pennewill, 537.*

stances and conditions, and which it would be gross negligence not to use. It is not so high a degree of care as the company would be required to use for the protection of persons lawfully on its tracks. It is not such care as makes it necessary for the company to carefully axamine its property, or be on the lookout, for trespassers; neither is it such care as would interfere with the proper and faithful discharge by the employees of the company of their duties and labors; but only such as would be reasonable and proper under all the circumstances and conditions surrounding the case.

4. If the plaintiff was seen in a dangerous position just before the accident by the servants of the defendant company, or by the exercise of proper care upon their part might have been seen, and they could have prevented the accident, but made no effort to do so, in such case there would be such a lack of care as would constitute gross negligence. But if the plaintiff was not seen by the servants of the defendant because of their attention to their work in hand, the company would not be guilty of gross negligence.

5. A railroad company must use greater care in the operation of its engines and cars in more populous places, and at points where many persons and especially children are in the habit of gathering, than in places not much frequented. If the company discovers an infant upon its property it should exercise such care for its protection as would be reasonable, under all the circumstances, including the maturit, and capacity of the infant, and his familiarity with the surroundings and conditions. But the company is not bound to become an insurer of the infant's safety, to anticipate his presence on the tracks, or to use any greater care than the circumstances reasonably require. A railroad company has a right to run its trains as usual, without special precaution as to trespassers or licensees.

6. The conduct of children, in the matter of contributory negligence, should not be governed by the same rule that governs adults. While it is the duty of infants to exercise ordinary care to avoid injury, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under like circumstances. But this is not an inflexible rule, and is to be modified according to the maturity and capacity of the infant, his ability to understand and appreciate the danger and his familiarity with all the surroundings and conditions in each particular case.

7. The measure of damages stated. Doctrine of exemplary damages not applicable.

(*March 20, 1901.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Josiah Marvel* and *David T. Marvel* for plaintiff.

TULLY'S ADMR. vs. P., W. & B. R. R.     457

FACTS.

*Herbert H. Ward* and *Andrew C. Gray* for defendant.

Superior Court, New Castle County, February Term, 1901.

ACTION ON THE CASE, (No. 181, September Term, 1896), to recover damages for the death of Henry Tully, an infant, which death plaintiff alleged was caused by the negligence of the defendant company.

The material facts were as follows : An engine and train crew of the defendant had shifted a box car, coal car, and stone car from the main track of the defendant's road, in the City of Wilmington, to a side track, known as the corn track, leaving the end of the stone car projecting over the main track. Immediately thereafter the said Henry J. Tully, aged about eight years, and two other small boys climbed into said coal car, which was empty, for the purpose of picking up refuse coal. Henry Tully went first into the gates at the bottom of the car, and quickly returning went to the end of the car toward the main track and put one leg over the side of the car apparently for the purpose of getting off of the car. At this time the engine was on the main track pushing a box car, upon the top of which was a brakeman giving signals to the engineer. Just then someone called out, " You can't pass, come back again." The brakeman gave the signal to back, the engine came back, and the box car pushed by the engine, struck the end of the stone car projecting over upon the main track, with such force as to drive forward eight or nine feet the three cars upon the corn track, and throw Henry Tully from the coal car. The car wheels passed over him and he was instantly killed.

A person in the employ of the defendant, described as " the head brakeman or conductor, who ruled everything around there " * * * " the man who bossed them all," passed within three feet of Henry Tully as he was getting into the coal car, and looked at him , but said nothing.

Before and at the time of the accident the brakeman on the

top of the box car pushed by the engine, was looking down upon the boys in the coal car, and saw them or could have seen them. The sides of the coal car came only up to about the waist of Henry Tully. While the boys were on the coal car no warning was given by bell, whistle or otherwise.

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—In this action Thomas J. Tully, administrator of Henry Tully, deceased, seeks to recover from the defendant, the Philadelphia, Wilmington and Baltimore Railroad Company, damages for the death of said deceased, which death the plaintiff alleges was caused by the negligence of the defendant company. It is averred by the plaintiff that the defendant so negligently and carelessly operated its road on the twenty-fifth day of August, 1896, at the place where the accident occurred that the said Tully was violently thrown from a car and instantly killed.

The defendant company on the other hand denies that it was guilty of any negligence whatever that resulted in the death of the plaintiff's intestate; that it observed all the care and prudence that it was required to exercise under the circumstances, and that if the death of Henry Tully was caused by negligence, it was his own and not that of the company, and, therefore, that the plaintiff cannot recover in this action.

It is admitted that the defendant was at the time and place of the accident operating the road and cars in question, and it will be for you to determine from the testimony in this case, after applying thereto the law as we shall declare it to you, whether the death of Henry Tully was caused by the negligence of the defendant, and, if so, whether said negligence was the proximate cause of the accident. If the negligence of the deceased was the proximate cause of the accident and death, then he contributed to the accident, and the plaintiff, his administrator, cannot recover. And where there has been mutual negligence, and the negligence of each party was operative at the time of the accident, no action whatever

TULLY'S ADMR. vs. P., W. & B. R. R.        459

CHARGE.

can be sustained.   But if the negligence of the defendant was the
proximate cause of the accident and death, in that case, although
the deceased might have been guilty of some negligence, it would
not be contributory negligence, for it is well settled that the plain-
tiff may recover damages for an injury caused by the defendant's
negligence, notwithstanding the plaintiff's own negligence exposed
him to the risk of injury, if such injury was proximately caused
by the defendant's failure, after becoming aware of the danger of
the plaintiff's intestate, to use ordinary care for the purpose of
avoiding injury to him.

Negligence is never presumed in cases of this character, and in
order for the plaintiff to recover, the negligence of the plaintiff
must be proved to your satisfaction by a preponderance of the
evidence.

What constitutes negligence is a question of law for the Court,
but whether negligence exists in the particular case, is a question of
fact for the determination of the jury

Negligence has been variously defined in the courts of this
State, but after all, the different definitions mean substantially one
and the same thing.   It has been termed the want of ordinary
care, that is, the want of such care as a reasonably prudent and
careful man would exercise under similar circumstances.

*Murphy vs. Hughes et. al., 1 Pennewill, 250 ;   Mills vs. Wil.
City Ry. Co., 1 Marvel, 269 ;  Knopf vs. P., W. & B. R. R. Co., 2
Pennewill, 392.*

It has been also termed the failure to observe, for the protec-
tion of the interests of another person, that degree of care, precau-
tion and vigilance which the circumstances justly demand, whereby
such other person suffers injury.

*Cooley on Torts, 630 ;   Tully's Admr. vs. P., W. &. B. R. R.
Co., 2 Pennewill, 537.*

In the latter case, decided in the Supreme Court of this State,
the Court said :   " While the obligation to exercise care in the con-
duct of one's business varies under different circumstances, there
always remains the duty to exercise such reasonable care as should

be exercised by a person of ordinary prudence under like circumstances. And the same learned judge, in the course of his charge to the jury in the case of *Price vs. Charles Warner Company, 1 Pennewill, 462,* said : "What is due and proper care must depend on the particular facts of each case, and general propositions unless limited and qualified by the circumstances under consideration, are apt to be misleading. * * * A railway is held to greater caution in the more thronged streets of the more densely populated portions of the city than in the less obstructed streets in the open or suburban parts. * * * Manifestly the care to be used depends largely upon the circumstances of each case. It would, therefore, be difficult, if not dangerous, to lay down any inflexible rules."

Chief Justice Gilpin, in delivering the opinion of the Court in the case of *Patterson vs. P., W. & B. R. R. Co., 4 Houst., 100,* said : "The terms ordinary care and diligence, when applied to the management of railroad engines and cars in motion must be understood, however, to import all the care, circumspection, prudence and discretion which the peculiar circumstances of the place or occasion require of the servants of the defendant company, and this will be increased or diminished according as the ordinary liability to danger and accident, and to do injury to others, is increased or diminished in the movement and operation of them.

It will become your duty, gentlemen of the jury, to apply the principles of law in respect to negligence, and about which we think there is really no dispute, to the facts in the present case, and determine whether the defendant did exercise due care, and such as a reasonably prudent man would have exercised under similar circumstances.

The law as to what constitutes such negligence as will permit a plaintiff to recover for injuries sustained while trespassing on the property of the defendant has been very clearly, and we think correctly, laid down by this Court in the case of *Weldon vs. P., W. & B. R. R. Co., 2 Pennewill, 11,* as follows : "But where persons are

TULLY'S ADMR. vs. P., W. & B. R. R.     461

CHARGE.

using such permissive way, without such invitation of the company, and only upon the permission or silent acquiescence of the company, the rule of law is the same as in the case of mere trespassers, that the company will be held liable only for such injuries as arise from its gross negligence or wanton disregard of human life.   In such case the user crosses the railway at his own risk, and subject to all the perils of the way.

"This doctrine is supported by the highest authority and is based upon sound reason.   It would be unreasonable to hold that a person who of his own will and for his own convenience enters upon the land of another, and because he is not ordered off the premises by the owner of the land, that by such forbearance on the part of the owner, he should acquire such a status, as to impose upon such owner the duty to see that the way is safe for such gratuitous licensee, and that no accident should befall him while thus using the premises for his own convenience.

"How much more reasonable to hold, that such gratuitous licensee should proceed at his own risk, with every sense alert for his own protection, save only as against wanton negligence on the part of the owner.   Any other doctrine would impose unreasonable burdens upon a merely private owner of land; but where the owner is the operator of a public line of railway, with tracks and numerous sidings, of necessity open to the public, in country, town and city, it would impose intolerable burdens, and require an enormous force of employees, to watch and guard every possible opening along its lines, and would so cripple the movement of trains, as to make rapid transit a matter of impossibility.   This is irrespective of the added danger to all travelers by rail that would arise from obstructions and accidents thus encouraged, on the part of careless users of railroad premises.

"Indeed the doctrine that a naked license, or permission to enter upon one's premises, will not create a duty or impose an obligation on the part of the owner towards the licensee, to provide against danger or accident, is so elementary that it cannot be questioned."

Although in that case there was involved a way by permission or silent acquiescence, on or over the tracks of the company, yet the rule there laid down would be equally applicable to all cases where the plaintiff sues for injuries received while trespassing on the property of the defendant, or while there by his mere permission and silent acquiescence, and without any invitation or inducement from the defendant. And therefore, in the case before us, we say to you that the defendant could be liable only for such injuries as arose from its gross negligence or wilful and wanton carelessness.

In the case of *Patterson vs. P., W. & B. R. R. Co.*, the Court said : " It is well settled in the law that railroad companies have the exclusive right to occupy, use and enjoy their railway tracks and siding, and such exclusive right is absolutely necessary to enable them properly to perform the duties of their employment. * * * And any person going upon, using or occupying a track or siding, or any part of the same, of a railroad company, without its consent, is held in law to be there wrongfully, and therefore to be a trespasser; and in case of injury happening to his person or property while so trespassing upon it, from the movement of the engine or cars of the company over it, he is without remedy and cannot recover damages for the injury unless it is at the same time proved by affirmative evidence that the agents or servants of the company having the direction and management of such engines or cars could by the exercise of ordinary care and diligence on their part have prevented or avoided it under the circumstances, or that they wilfully or wantonly did it.

It appears therefore, and is the law, that what would be ordinary care and diligence in one case might not be in another, and that in some cases the failure to use ordinary care and diligence even for the protection of trespassers, would constitute gross negligence and carelessness, and subject the party guilty thereof to an action for damages.

It is true as stated by the Court in the case of *Tully vs. P.*,

TULLY'S ADMR. vs. P., W. & B. R. R.    463

CHARGE.

*W. & B. R. R. Co., supra*, that, "The mere fact that a plaintiff when he suffered the injury complained of, was a trespasser on the defendant's premises, and would not have been injured if he had not so trespassed, is not conclusive evidence of contributory negligence."—*1 Sherman and Redfield on Neg., Sec. 97.* And it is also true that "There are many approved cases in which trespassers have recovered damages for personal injuries, and this is especially so in cases of children."—*1 Sherman and Redfield on Neg., Sec. 98.*

In the case of *Cummins vs. Spruance, 4 Harr., 315*, it was held that the master of the defendant's vessel was without excuse for running against a vessel out of her proper place and in a position of danger in a navigable stream, if by the exercise of ordinary skill, care and diligence he could have avoided the collision—and that in such cases the defendant would be liable. It is universally conceded that a trespasser may recover for injuries resulting from the gross negligence or carelessness of the defendant.

It was laid down in the case of *Price vs. Charles Warner Company, supra*, that street car companies had not the right to run down persons or vehicles whenever upon their tracks, even when there unlawfully or negligently, if by the exercise of reasonable care on the part of those in charge of the cars, collision could be avoided. But these cases, and the principles of law declared therein, mean simply this:—that even towards trespassers railroad companies must exercise such care and diligence as a reasonably prudent man would ordinarily use under similar circumstances and conditions, and which it would be gross negligence and carelessness not to use. It is not so high a degree of care and diligence as the company would be required to use for the protection of persons lawfully and rightfully on its tracks. It is not such care and diligence as make it necessary for a railroad company to carefully examine its property, or be on the lookout for trespassers; neither is it such care and diligence as would interfere with the proper and faithful discharge by the employees of the company of their duties and labors; but only such as would be reasonable and proper under

all the circumstances and conditions surrounding the case at the particular time.

Iu the case now before us, if the servants of defendant saw Henry Tully in the position he was just before the accident, and could have prevented the accident but made no effort to do so, then there was such a lack of care as would constitute gross negligence. And we may say that even though he was not then actually seen by the servants of the company, yet if he and they were so situated that he might have been seen, and must have been seen if they had used proper care under the circumstances, there was such a want of care and diligence as would amount to gross negligence. But on the other hand, although the said Tully was in such a position as that he might have been seen by said servants, yet if he was not seen because of their attention to their work and duties in hand, there was not a want of proper and reasonable care, and the company was not guilty of gross negligeuce.

It is true, and we so charge you, that a railroad company is bound to use greater care in the operation of their engines and cars in more populous places, and at points where many persons, and especially children, are in the habit of gathering, than they would be required to use in places not much frequented.

It is also true that if a railroad company discovers an infant upon its property it should exercise such care for his protection from injury as would be reasonable under all the circumstances, including the maturity and capacity of the infant, and his familiarity with the surroundings and conditions. But the company is not required to be an insurer of the infant's safety, to anticipate his presence on the tracks, or to use any greater care than the circumstances reasonably require.

A railroad company has a right to run its trains as usual, without special precaution as to trespassers or licensees; and if such persons—be they adults or children—put themselves in danger without any notice to the trainmen, or so suddenly that no reasonable degree of care will suffice to correct them, no recovery can be had.

TULLY'S ADMR. vs. P., W. &. B. R. R.     465

CHARGE.

While it is a rule of law that contributory negligence on the part of the person injured will defeat the recovery of damages for the injury, yet such rule is somewhat affected by the relative rights and duties of the plaintiff and defendant at the time and under the circumstances of the accident, growing out of the infancy of the plaintiff or person injured. It is a well established rule of law that the conduct of children, in the matter of contributory negligence, should not be governed by the same rule that governs adults. For while it is the duty of the infant to exercise ordinary care to avoid the injuries of which they complain, ordinary care for him is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under like circumstances. But this is not an inflexible rule, and is to be modified according to the maturity and capacity of the infant, his ability to understand and appreciate the danger, and his familiarity with all the surroundings and conditions in each particular case; and it is for the jury to say whether under all the circumstances the infant exercised reasonable care.

*Weldon vs. P., W. & B. R. R. Co., supra.*

If you are satisfied by a preponderance, that is, the weight of the evidence, taking into consideration all the facts and circumstances of the case, that the death of Henry Tully was caused by the gross negligence and carelessness of the defendant company, without fault on his part (therein considering his age, intelligence, familiarity with the place and all the surroundings), then your verdict should be for the plaintiff, and the measure of damages would be such a sum as the deceased would probably have earned in his business during life, and which would have gone to his next of kin, taking into consideration the age of the deceased, his ability, disposition to labor and habits of living and expenditure.

*Maxwell vs. Wil. City Ry. Co., 1 Marvel, 199.*

We do not think that the doctrine of exemplary damages applies to this case. Although the authorities are somewhat conflicting

as to the measure of damages in cases like the present, we feel bound to adhere to the rule laid down in the Maxwell case. In that case this Court placed a construction upon the statute which provides for suits of this character. We think the rule there laid down is based upon sounder reason, and is supported by better authority, than the one that recognizes a different doctrine. Even though the plaintiff's intestate in the Maxwell case was not an infant, still there was no evidence of any substantial benefit to the beneficiaries, or next of kin, during the life of the deceased.

If you should believe that the contributory negligence of Henry Tully himself was the cause of his death (bearing in mind what we have said to you relative to contributory negligence on the part of an infant), or if you should not be satisfied that the gross negligence of the defendant company was the proximate cause of such death, your verdict should be for the defendant. The burden is upon the plaintiff to show that the gross negligence, or wilful or wanton carelessness of the defendant, was the proximate cause of the accident.

The case is now with you. You will remember the testimony. Of that you are the sole judges, and upon that you must make up your verdict, after applying thereto the law as we have stated it.

Verdict for defendant.