# Charlton, Appellant, v. Baltimore & Ohio Railroad Company.

*Negligence—Railroads—Pedestrian—Train standing at permissive crossing—Pedestrian climbing over cars—Contributory negligence—Judgment for defendant n. o. v.*

1. The Act of March 20, 1845, P. L. 191, relating to the obstruction of public crossings, does not apply to a permissive crossing over a railroad.

2. In an action by a pedestrian against a railroad company to recover damages for personal injuries sustained at a permissive crossing over defendant's tracks, the plaintiff was guilty of contributory negligence and the court did not err in entering judgment for defendant non obstante veredicto, where it appeared that when plaintiff arrived at the crossing it was obstructed by a standing train; that it was so dark that he could see only three cars but knew that the train was a long one with an engine attached and was liable to move at any time; that he had been waiting at the crossing ten minutes with two others whom he did not know, when a person walking on top of the cars, and whom plaintiff believed was a brakeman, told them to cross; and that without any effort to ascertain the safety or danger of the situation plaintiff, who was the only witness of the accident, then climbed over the cars, immediately following the other two pedestrians, and was injured by the moving of the train.


Argued Oct. 20, 1915. Appeal, No. 109, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 568, for defendant non obstante veredicto in case of Samuel Charlton v. Baltimore & Ohio Railroad Company. Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.


Trespass for personal injuries.

The facts appear from the following opinion by HAY-MAKER, J., sur defendant's motion for judgment n. o. v.:

This is an action in trespass for personal injuries, resulting in a verdict for plaintiff. In passing on the motion we will consider the plaintiff's testimony alone,

treating it as truthful wherever material, and using other evidence only when it is undisputed, and solely for the purpose of giving a history of the case. The plaintiff, when about forty-eight years of age, attempted to climb over the couplings of bumpers between two united box cars of a freight train standing at rest over a permissive crossing, about 4:30 a. m. on July 15, 1911, and by the sudden starting of the train was thrown down between the cars onto the track, his foot was run over, and later amputated at the ankle. The plaintiff saw the train standing on the crossing five minutes before he arrived, and he waited, after arriving at the crossing, ten minutes, with two others whom he did not know, when a person walking on top of the cars, whom he believed was a brakeman, said "Go ahead boys, there is no danger," or "Come ahead boys," and waved his hand as indicated by the plaintiff. Whereupon the two strangers climbed over and were immediately followed by the plaintiff. The train in question was made up at Connellsville and consisted of about sixty cars. When it arrived at Hazelwood, in the City of Pittsburgh, it had about twenty cars that were to go to Willow Grove, a point on or near the Allegheny river, several miles north of Pittsburgh. At Hazelwood there are two main tracks and a siding called the Elba Hill siding. The cars for Willow Grove were cut off from the rear of the train, and were left on the westbound main track, while the balance of the train, consisting of about forty cars, was hauled onto the siding and over the permissive crossing, where it was standing with the engine attached when the plaintiff arrived there on his way to work. The purpose was to place those cars on that siding, cut or open the train for the permissive crossing, then detach the engine, run it westward a short distance over the siding to and.upon the main westbound track, and then back eastwardly over that main track, pick up the cars left on the main track, and haul them to Willow Grove. It was while the train of cars was upon the sid-

ing and was being manipulated for the purpose afore-
said, the plaintiff was injured.   The tracks at the cross-
ing consist of two main tracks and the siding, and those
tracks, at that point run practically east and west;
Second avenue on the south runs parallel with and close
to the east bound track, Irvine street runs parallel with
those tracks on the north, and its southside line prac-
tically reaches to the north side of the defendant's right
of way.   North of and fronting on Irvine street, near
the crossing, are quite a number of dwelling houses.   At
the rear of those houses the ground rises abruptly for
several hundred feet until it reaches a thickly populated
part of the city at the top of the hill.   Persons on the
hill desiring to use the permissive crossing descend the
hill on steps provided by the city for that purpose.   The
plaintiff lived not far from the head of the steps, and
used them that morning on his way to work, at a point
south of the defendant's right of way and Second avenue.
The crossing in question is not only used by pedestrians,
and teamsters, but it is planked and filled in to a width
of sixteen feet, and maintained by the defendant, and
a sign or warning is erected on a post which reads "Rail-
road Crossing."   The traveled way over the tracks from
Irvine street to Second avenue was never laid out by
the city, and is only a permissive crossing, used by as
high as 800 to 1,000 persons daily.   Considering the
extent of the public use of that permissive crossing, and
its recognition as such by the defendant for many years,
we believe that the reciprocal duties of the defendant
and the public, so long as it is so used, are the same as
in the case of a public street, excepting probably, in so far
as those rights are affected by the Act of March 20, 1845,
P. L. 191, relating to the obstruction of public crossings.
The plaintiff contends that it was an act of negligence to
allow a train of cars to remain on the crossing for the
length of time shown by him, being about fifteen min-
utes; that it showed negligence of the defendant in
thereafter starting the train without warning of some

kind, and that the plaintiff was relieved of the charge of negligence by the invitation of the brakeman to cross over the train. We do not think the Act of 1845 applies to a permissive crossing. Assuming that, after the train had stood upon the crossing for that length of time, the defendant owed the plaintiff the duty of notice of the intention to move it, and gave no such warning, the question of the contributory negligence of the plaintiff would still be in the case, and in our opinion that is the important and controlling question to be decided. If decided adversely to the plaintiff, the negligence of the plaintiff would not avail him.

The plaintiff being the only witness as to the manner in which he attempted to cross over the cars, and there being no disputed facts for a jury, the question of his negligence becomes a matter of law to be determined by the court. The train had been standing not over ten minutes after he arrived at the crossing. The plaintiff said that it was so dark that he could see only three cars, the one immediately in front of him and one at either end. He knew, or at least believed, that it was a long train with an engine attached to the west end, and was liable to move at any time. He made no attempt to ascertain conditions, or the probable movements of the train. He made no investigation, but blindly, at the suggestion of some one walking along on top of the cars, that he took for a brakeman, although it was too dark to be able to say that he really was such, climbed upon the cars. There was no evidence that trains at other times stood upon that crossing or that men were in the habit of crossing over cars there with the knowledge of trainmen. It is simply a case of a man, arriving at a permissive crossing obstructed by a train and after waiting ten minutes, climbing over the cars without any endeavor to ascertain the safety or danger of the situation. Conceding that the man on top of the cars was a brakeman, and told the plaintiff to climb over, would that relieve the plaintiff from the

necessity of exercising reasonable care, and justify an act, which, at best, is a hazardous undertaking?

In 2 Rorer on Railroad, 1055, it is said: "It is legal negligence and should be so held by the court, for one to attempt......cross the platform of a car of a standing train." To the same effect are 3 Elliott on Railroads, Section 1169, 2d Ed.; Beach on Con. Neg., Sec. 196, 3d Ed.; Memphis & Charleston R. R. Co. v. Copeland, 61 Ala. 376; Hudson v. Wabash Western Ry. Co., 123 Mo. 445; Magoon v. Boston & Maine R. R. Co., 67 Vt. 177; O'Mara v. Delaware & Hudson Canal Co., 25 Hun. (N. Y.) 192; Wherry v. Duluth, Missabe & Northern Ry. Co., 64 Minn. 415; Lewis v. Balto. & Ohio R. R. Co., 38 Md. 588, and Chicago, Burlington & Quincy Co. v. Pinchin, 31 Am. & Eng. R. R. Cases 428. The cases in our own State involving the right of minors to recover, where trains are started at crossings without warning, have no application to those of adults. Conceding that the plaintiff was directed by the brakeman to cross over the cars, will that relieve him from the charge of negligence? We do not think so, on that ground that the plaintiff was bound to exercise due care, and cannot rely on the invitation of the brakeman where to do so was clearly hazardous; 3 Elliott on Railroads, Sec. 1171; Chicago, Burlington & Quincy R. R. Co v. Sykes, 1 Bradwell (Ill.) 520; Lake Shore & Mich. So. v. Pinchin, 112 Ind. 592; Deery v. Camden and Atlantic R. R. Co., 163 Pa. 403, and Rothstein v. Penna. R. R. Co., 171 Pa. 620. Nor would the moving of the train without warning make the defendant liable under the facts of this case: O'Mara v. Delaware & Hudson Canal Co., supra; Wherry v. Duluth, Missabe & Northern Ry. Co., supra, and Magoon v. Boston & Maine R. R. Co., supra.

Verdict for the plaintiff for $4,860.

The court entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant n. o. v.

*Meredith R. Marshall,* with him *Rody P. Marshall* and *E. T. Adair,* for appellant.

*Allen T. C. Gordon,* with him *William Watson Smith,* for appellee.

PER CURIAM, January 3, 1916:

The judgment non obstante veredicto in favor of the defendant is affirmed on the opinion filed by the learned court below in entering the judgment.