MILTON BRADERMAN, an infant, by his next friend, PHILLIP BRADERMAN, *vs.* BALTIMORE AND PHILADELPHIA RAILROAD COMPANY, a corporation created by and existing under the laws of the State of Delaware.

(*March* 18, 1926.)

PENNEWILL, C. J., and HARRINGTON, J., sitting.

*James R. Morford* for plaintiff.

*John W. Huxley* for defendant.

Superior Court for New Castle County, March Term, 1926· No. 98, January Term, 1924.

HARRINGTON, J. We sustain the objection. See *Hunter v. P. B. & W.*, 1 *Boyce* 5, 75 *A*. 962.

The same witness was also asked in direct examination:

How much were this boy's (referring to Milton's) hospital and doctors' bills?

Huxley, attorney for defendant, objected to the question on the same ground.

HARRINGTON, J. We sustain the objection.

The same witness, after testifying that he had had occasion in a general way during his life to observe the actions of boys around thirteen years of age, was also asked on direct examination:

Basing your answer upon your experience and observation of other boys would you say that Milton at the time this accident occurred had more or less common sense than boys of the same age usually have?

Huxley, attorney for defendant, objected to the question on the ground that it called for a conclusion of the witness, who was not an expert, and that it, therefore, was not the proper way to prove lack of mental development.

HARRINGTON, J. We sustain the objection.

Charles B. Palmer, a witness produced by the plaintiff, after testifying that he had been in the life insurance business for a

great many years and was familiar with the standard mortality tables of life insurance companies, was then asked on direct examination:

What is the expectancy of life of a boy of thirteen years of age?

Huxley, attorney for defendant, objected on the ground that while the question would be admissible if Braderman had been killed, it was not admissible as he was merely injured.

HARRINGTON, J. It has appeared that the plaintiff's injuries were permanent; we, therefore, overrule the objection. See *Chamberlayne's Hand Book on Ev.*, § 369, note; *Coons v. Pritchard*, 69 *Fla.* 362, 68 *So.* 225, *L. R. A.* 1915F, § 558.

■ Milton Braderman, the infant plaintiff, after testifying that he climbed up on the bumpers of the train blocking the crossing, was then asked in direct examination:

Will you tell the Court and jury whether or not you knew it was dangerous to do that?

Huxley, attorney for defendant, objected on the ground that the plaintiff's mental capacity to appreciate danger could not be proved in this manner.

HARRINGTON, J. We sustain the objection.

■ ■ The same witness, in direct examination, was also asked the following question:

Before the train gave the jerk that caught your foot, was any signal by bell, whistle, or in any other manner given by it, to warn you that it was about to start?

Huxley, attorney for defendant, objected on the ground that it had appeared that Braderman was a trespasser and defendant company was, therefore, under no obligation whatever to give him any warning unless it knew that he was on the train or by the exercise of due care and caution should have known that he was there. He cited *Cherry v. St. L. & S. F. R. R. Co.*, 163 *Mo. App.* 53, 145 *S. W.* 837; *Clev., etc., R. Co. v. Tartt*, 64 *F.* 823, 12 *C. C. A.* 618; *Kirtley v. Chic. R. Co. (C. C.)*, 65 *F.* 386; *Pa. R. R. v. Rogers*, 244 *F.* 76, 156 *C. C. A.* 504; *Maynard v. Boston*, 115 *Mass.* 458,

15 *Am. Rep.* 119; *Philadelphia & R. R. Co. v. Humell*, 44 *Pa.* 375, 84 *Am. Dec.* 457; *Andrews v. Cen. R. R. & B. Co.*, 86 *Ga.* 192, 12 *S. E.* 213, 10 *L. R. A.* 58; *Papich v. C. M. & St. P. R. R. Co.*, 183 *Iowa* 601, 167 *N. W.* 686; *Wendorf v. Direc. Gen.*, 173 *Wis.* 53, 180 *N. W.* 128; *B. B. Jones v. Ill. & Centr. R. R. Co. (Ky.)*, 104 *S. W.* 258, 13 *L. R. A. (N. S.)* 1066; *Corcoran v. St. L., etc., R. R. Co.*, 105 *Mo.* 399, 16 *S. W.* 411, 24 *Am. St. Rep.* 394; *Brooks v. B. & O. R. Co. (D. C.)*, 285 *F.* 743; *Charlton v. B. & O. R. R. Co.*, 252 *Pa.* 107, 97 *A.* 126.

Morford, attorney for plaintiff, cited *McCoy v. P. W. & B. R. R. Co.*, 5 *Houst.* 599, and *Tully's Adm'r v. P. W. & B. R. R. Co.*, 3 *Penn.* 455, 464, 50 *A.* 95.

Huxley, attorney for defendant, contended that neither of these cases supported the contention of the plaintiff; the McCoy case had no similarity whatever, as, in that case, the plaintiff's horse was frightened by a box car left standing in part on a railroad siding, and in part projecting over a street crossing. He further contended that while the Tully Case involved the rights of a trespasser on a railroad car, there was evidence to show that two of the defendant's employees, connected with the operation of its train, knew, or by the exercise of due care, should have known of the presence of the Tully boy in a position of danger, and yet failed to warn him.

HARRINGTON, J. The objection is sustained. There is nothing in the evidence to show that the servants of the defendant company knew, or should have known, when they started the train at the time of the accident, that the plaintiff was then between any of the cars in a position of danger; there was, therefore, no duty resting on the defendant to give notice by bell, whistle or otherwise that the train was about to start. See cases above cited by defendant. See, also, *Patterson v. P. W. & B. R. R. Co.*, 4 *Houst.* 103, 109, 110; *Tully's Adm'r v. P. W. & B. R. R. Co.* 3 *Penn.* 455, 460—463, 50 *A.* 95; s. c., 2 *Penn.* 537, 47 *A.* 1019, 82 *Am. St. Rep.* 425; *Vandegrift v. Del. R. R. Co.*, 2 *Houst.* 287.

At the close of the plaintiff's case, Huxley, attorney for the defendant, moved for a nonsuit:

First, because it had not been proved that the defendant violated any duty which it owned to the plaintiff.

Second, the declaration alleged negligence on the part of the Baltimore and Philadelphia Railroad Company, but there was no proof whatever that that company operated the train that injured the plaintiff, or that it operated any other trains on the tracks that crossed the Eleventh Street crossing.

HARRINGTON, J. The motion for a nonsuit is granted on both grounds relied on by the defendant.

The attorney for the plaintiff refused to accept the nonsuit, whereupon the jury was directed to return a verdict for the defendant.