STATE *vs.* MICHAEL VALENT and BRUNO DOMINELLO.

(*April* 30, 1926.)

RODNEY, J., sitting.

*James R. Morford*, Deputy Attorney-General, for the State.

*John W. Huxley, Jr.*, for defendant, Valent.

*James Saulsbury* for defendant, Dominello.

Court of General Sessions for New Castle County, January Term, 1926.

No. 9, September Term, 1925.

RODNEY, J. I shall first consider the propriety or right of the state to enter a *nolle prosequi* at the present stage of this case, for it is apparent that if such *nolle prosequi* is properly entered, then such determination will dispose of one of the reasons for a new trial.

A great many cases discuss the right to enter a *nolle prosequi*. Citations of most of them may be found in notes to 35 *L. R. A.* 701, 22 *L. R. A.* (*N. S.*) 469, *Ann. Cas.* 1915*D*, 1004, and in 16 *C. J.* 248 and 432. Generally, they are divided as to the time of the entry of a *nolle prosequi* into three classes. (1) Before the jury is impaneled and sworn; (2) while the case is before the jury; and (3) after verdict.

In considering the right of the Attorney General to enter a *nolle prosequi*, such right must be tested by a consideration of the necessity of obtaining (a) the consent of the defendant and (b) the consent of the Court. Now, it seems to me that the basic and underlying reason for ever requiring the consent of the defendant must be that because jeopardy having once attached by reason of the first trial, the defendant cannot again be put in jeopardy without his consent in violation of the constitutional provision and to allow him to plead to any subsequent proceedings *autrefois acquit*

or *autrefois convict*, as the case may be. These pleas of *auterfois acquit or autrefois convict* are of a mixed nature and consist partly of a matter of record and partly of matter of fact. The matter of record is the former indictment and the conviction or acquittal; the matter of fact is the averment of the identity of the offense and person. *State v. Townsend, 2 Harr.* 543, 547. In the present case, the jury rendered a general verdict of guilty, and if the foregoing be correct, the consent or nonconsent of the defendant to the entry of the *nolle prosequi* need only be considered when any subsequent proceedings constituting a possible second jeopardy have arisen and will not be further considered in the present stage of this case.

The great weight of authority sustains the right of the state's prosecuting officer to enter a *nolle prosequi* before the jury is impaneled and sworn. It would seem, however, that after the case is before the jury, the majority of cases hold that during such time there exists no right to enter a *nolle prosequi* without the consent of the defendant. Attention may, however, be drawn to the Delaware case of *State v. Hamilton, 6 Penn.* 433, 67 *A.* 836, where during the trial a *nolle prosequi* was allowed to be entered over the objection of the defendant. See, also, *State v. Crutch, Houst. Cr. Cas.* 204.[1]

Many of the American cases fail to appreciate the rights and duties pertaining to and inherited by the constitutional office of Attorney General where the duties of such office are not expressly mentioned. Our first Constitution, framed a few months after our Proclamation of Independence, established an Attorney General as a constitutional officer and such officer has been continued to this day under the subsequent Constitutions. The defined powers of the Attorney General are comparatively few, and it has been almost uniformly held that when uncontrolled by some constitutional provision or legislative enactment the powers and duties of the Attorney General must be sought in that common law—the source alike of the body of both our civil and criminal law. 3 *A. & E.* (2d Ed.) 475, and cases cited. In *State v. Morris, Houst. Cr. Cas.* 124, it was held that the Attorney General being a constitu-

---

[1] See Hall v. State, 3 W. W. Harr. (33 Del.) 233, 134 A. 692.

tional officer the Legislature had no right to appoint other persons to perform duties of that office.

But I am not directly concerned with the power of the Attorney General to enter a *nolle prosequi* in either of the first two classes of cases as above outlined, although, as I have pointed out, the Delaware *nisi prius* cases seem to give to the office a greater power than obtains in most jurisdictions. I am only concerned with the right to enter a *nolle prosequi* after verdict and before judgment or sentence. It is, of course, obvious that if the consent of the defendant is only necessary to the entry of a *nolle prosequi* in order to obtain the record entry to sustain the plea of former jeopardy, such reasons do not apply after verdict.

The great and leading case is *Com. v. Tuck*, 20 *Pick.* (37 Mass.) 356. There the Court (among whom was Shaw, C. J.) held:

"After a verdict of guilty is rendered, the defendant is to be sentenced on motion of the Attorney General; and we have no doubt of his authority to enter a *nolle prosequi* after verdict. It cannot operate to the injury of the defendant. If the indictment is sufficient this act of the Attorney General saves him from the sentence of the law. If it be insufficient, it can do him no harm, for no judgment could be rendered upon the indictment, and so it would not bar another indictment."

See, also, *State v. Smith*, 49 *N. H.* 155, 6 *Am. Rep.* 480; *Anonymous*, 31 *Me.* 592; *State v. Whittier*, 21 *Me.* 341, 38 *Am. Dec.* 272; *Baker v. State*, 12 *Ohio St.* 215; *Com. v. Gillespie*, 7 *Serg. & R.* (*Pa.*) 469, 10 *Am. Dec.* 475; *State v. Smith*, 67 *Me.* 328.

It also seems to be the law in England. *Reg. v. Leatham*, 8 *Cox. Cr. Cas.* 498.

The precise question before me is a narrower one than has been heretofore discussed. I am clearly of the opinion that the subject-matter covered by the *nolle prosequi* in this case is a mere matter of aggravation. As I read the statute, hereinbefore set out, it provides for the punishment of but one crime—robbery. A violation of the statute constitutes robbery, no matter where it may be committed, and the fact that it is committed on or near a highway or in a dwelling house is merely a specification of aggravation and

increased the severity of the punishment. While the indictment charged robbery on or near a highway, yet under *Section* 4826 of *Revised Code of* 1915 a verdict of simple robbery might have been found and the jury was so charged. See, also, *State v. Stewart and Norton*, 1 *Penn.* 433, 42 *A.* 624.

In *Com. v. Tuck*, *supra*, the Court said: "If the Attorney General may enter a *nolle prosequi* as to the whole of an indictment or of a count, so he may do as to any distinct and substantive part." This seems to be the general rule of law. Many statutes deal with crimes that in themselves contain all the essentials of an offense of lower degree plus some additional element; some statutes provide that a greater punishment may be inflicted when the crime is committed under aggravated circumstances. Such a statute is ours. The minimum imprisonment for simple robbery is ten years; the mimimum imprisonment when the robbery is committed on or near a highway or in a dwelling house is twenty years. In all these cases, it seems to be uniformly held that, even after verdict, the state may enter a *nolle prosequi* to the greater and more serious crime or enter a *nolle prosequi* as to the aggravating circumstances and the defendant may be sentenced accordingly.

In *Anonymous*, 31 *Me.* 592, four boys were convicted of breaking and entering a store and stealing therefrom. The state, after verdict, entered a *nolle prosequi* as to the breaking and entering, leaving the defendants to be punished for simple larceny.

In *State v. Eno*, 8 *Minn.* 220 (*Gil.* 190), the defendant was charged with larceny from the person, a higher degree of crime than simple larceny. A general verdict of guilty was rendered. The proof failing to sustain the larceny "from the person," the Court held a *nolle prosequi* might be entered to such matter and sentence the defendant for simple larceny.

In *Com. v. Tuck*, *supra*, where a defendant was convicted on a count charging that he broke and entered a shop in the night time with intent to commit larceny and did commit larceny, the state, after verdict, entered a *nolle prosequi* as to the breaking and entering, leaving the conviction to stand in respect to the larceny.

In *Com. v. Briggs*, 7 *Pick.* (24 *Mass.*) 177, the indictment con-

tained but one count which charged, however, a matter of aggravation alleging a former conviction for the same offense. No testimony was given concerning the former conviction or of identity. While a new trial was granted upon other grounds, Parker, C. J., held: "If an aggravation be laid to the offense charged, as in larceny, that it was in the nighttime, or in a dwelling house, the *nolle prosequi* in relation to the circumstance of aggravation, after conviction, could be of no prejudice to the defendant, and we do not see why for such cause he should have a right to stay the judgment."

In *Com. v. Jenks*, 1 *Gray* (67 *Mass.*) 490, the Court held that after a verdict of guilty on an indictment containing three counts the Attorney General could enter a *nolle prosequi* on two counts, leaving the conviction on the third count.

In *Baker v. State*, 12 *Ohio St.* 214, the defendant was indicted for assault with intent to murder. After the trial and charge, but before the jury retired, the State entered a *nolle prosequi* as to the intent to murder. A verdict of guilty was rendered, and conviction for simple assault was sustained.

Many other authorities might be cited to sustain this position, and I have been referred to no authorities to the contrary.

I am of the opinion that the Attorney General has the right to enter a *nolle prosequi* at the time and under the circumstances of this case. If the consent of the trial Court had been or should be necessary, such consent is hereby given.

There remains, then, but one further question to be considered. Certain witnesses were offered on behalf of the defendants to prove the good reputation of the defendants in the community in which they lived. These witnesses after testifying that they knew the general reputation of the defendants for honesty and fair dealing, and for peace, good order and general observance of the law testified that such reputation was good. On cross-examination, the witnesses testified that they had never heard the reputation of the defendants discussed at all, and that they had never heard any one speak either good or ill of the defendants. Their testimony was thereupon, on motion, stricken out.

The question before me is the admissibility of what may be called "negative evidence of good reputation." The witnesses have testified that they have never heard the reputation of the defendants discussed. The industry of counsel has collected a great mass of authorities tending to show that such negative testimony is admissible. I shall not pause to consider nor discuss these cases. So far as I am informed, or can ascertain, since 1864, when in *State v. Williamson, Houst. Cr. Cas.* 155, a Delaware Court first instructed a jury on character evidence, the uniform ruling has been that only affirmative evidence of good reputation has been received when any objection to such testimony has been made.

In *State v. Conlan*, 3 *Penn.* 218, 219, 50 *A.* 95, the Court charged the jury: "General good character for honesty and fair dealing is proved by evidence of general reputation in that respect; that is, by proof of what the people in the neighborhood in which the accused dwells generally say of his conduct or character in regard to honesty and fair dealing."

In *State v. Jones*, 4 *Penn.* 109, at 117, 53 *A.* 858, 861, the Court said that reputation of one is not what the witness may think, but "what is generally said about the prisoner."

In *State v. Stewart et al.*, 6 *Penn.* 435, 670, 786, the precise question here involved seems to have been passed on. There a witness had testified that he knew the general reputation of a defendant and that it was good. On cross-examination, the following question and answer appear: Question, "Have you ever heard anybody say anything about this man one way or the other?" Answer, "Never." The testimony of the witness was, on motion, stricken out.

Being clearly of the opinion that the uniform rule in this state heretofore has been to restrict such evidence to affirmative testimony of what the witness has heard people say concerning the reputation of the defendant, I am equally clear that any change in this rule should be made by the Supreme Court, and not by a court of lesser jurisdiction.

The territorial extent of the "community" as bearing on the admissibility of evidence of reputation has never been strictly de-

fined. In a city of considerably more than 100,000 population, the witness might know the defendant, but know no one else who knew him. To establish a rule that, under such circumstances, a witness can say that the defendant's reputation is good because he has never heard any one speak ill of him seems to allow a field of testimony too broad to be of any value. In *State v. Warren*, 138 *La.* 361, 70 *So.* 326, the Court held that while the fact that the reputation of the accused was never discussed in the community in which he lived is evidence of good character, a witness who has long known the accused, and had never heard his reputation discussed, while entitled to testify to that fact, and thus show his good reputation, could not testify affirmatively to the reputation of the accused unless he had heard it discussed. This, of course, is not the question before me, and involves an entire departure from the formal proof of reputation which in Delaware has always been based upon the witnesses' knowledge of the reputation of the defendant.

For the reasons stated herein, the motion for a new trial is denied.

Note.—This case was taken to the Supreme Court on writ of error; the proceedings in that court immediately follow this opinion.