[Civil No. 3365.   Filed February 5, 1934.]

[29 Pac. (2d) 151.]

S. A. GERRARD COMPANY, a Corporation, Appellant, v. R. K. COUCH and JOHN REID, by C. C. REID, His Guardian ad Litem, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Sidney Sapp and Mr. C. H. Jordan, for Appellee Couch.

Mr. John L. Sweeney, for Appellee Reid.

ROSS, C. J.—R. K. Couch and John Reid, by his guardian *ad litem,* C. C. Reid, each sued S. A. Gerrard Company upon separate causes of action for personal injuries sustained when the car in which they were riding ran into and against a GMC truck of defendant parked on public highway 66, about one and one-half miles east of Holbrook, Arizona, without any head or tail lights or other warning. The defendant's answer consisted of a general denial and the defense of contributory negligence on the part of plaintiffs. The trial was before a jury which returned verdicts for plaintiffs and upon which judgments were entered. The defendant has appealed therefrom.

The first error assigned is the order of the court consolidating the two cases for the purpose of trial. Section 3804 of the Revised Code of 1928 authorizes the consolidation of pending actions between the same plaintiff and the same defendant when the causes of action may be joined, or where the same plaintiff has several actions against several defendants which may be joined. These consolidations are discretionary with the court, but when made are for all purposes. That section also provides for consolidations for trial only in this language:

"Whenever several actions are pending by different plaintiffs against the same defendant, or by the same plaintiff against different defendants, arising out of the same transaction, the court may, in its discretion, order that any two or more of such actions be tried at the same time and before the same jury, and that separate verdicts be rendered and separate judgments be entered thereon."

In the present case the two causes of action arose out of the same act or omission or accident. The defendant contends that the word "transaction" in the statute has reference to the "subject-matter" only. An examination of the authorities shows that this word has received many definitions, depending upon its context. It embraces both contractual relations and occurrences in the nature of torts. *Stark County* v. *Mischel,* 33 N. D. 432, 156 N. W. 931. Construing a statute providing that persons interested in separate causes of action might join if the causes arose out of the same transaction, in *Metropolitan Casualty Ins. Co.* v. *Lehigh Valley R. Co.,* 94 N. J. L. 236, 109 Atl. 743, 744, the court said:

"But it is argued, not without some force, that the words 'transaction or series of transactions' do not include torts, but refer to contracts, business, and the like. While this may be the primary signification of the word, yet it is broader and more comprehensive. It is synonymous with 'act,' 'action,' 'affair,' 'business,' and the like. Standard Dict. It is a term broader than 'contract.' Contract is a transaction, but a transaction is not necessarily a contract. *Xenia Branch Bank* v. *Lee,* 7 Abb. Prac. (N. Y.) 372, 389; *Roberts* v. *Donovan,* 70 Cal. 113, 9 Pac. 180, 11 Pac. 599.

"The word 'transaction' is not limited or confined to actions arising out of contracts. *Pelton* v. *Powell,* 96 Wis. 473, 71 N. W. 887. That it includes actions of torts cannot be reasonably doubted. *Deagan* v. *Weeks,* 67 App. Div. 410, 73 N. Y. Supp. 641.

"In a general sense, a transaction is where both causes of action proceed from the same wrong."

The same evidence was necessary in both cases to prove the facts. The evidence of defendant applied alike to both plaintiffs. Both actions were for damages for the same wrongful act of defendant and differed only in the character and extent of the injuries sustained. The court did not abuse its discretion in ordering the consolidation. It was in the

economic interests of all parties, including the court, to have but one trial instead of two, and it does not appear that defendant was prejudiced thereby.

It is necessary to give a brief *résumé* of the facts before considering the other assignments. There was no material dispute in the evidence. The manner and circumstances under which the plaintiffs were injured are as follows: The plaintiffs Couch and John Reid, as guests of C. C. Reid, were on their way from Adamana, where they worked, to Holbrook, Arizona, for the purpose of getting their pay checks cashed. They were riding in a Ford roadster with the owner, C. C. Reid, at the wheel. The night was dark and cloudy and it was raining off and on. When within about one and one-half miles of Holbrook, and while traveling about thirty miles an hour, on the right-hand or north side of the road, between 7 and 8 o'clock in the evening of October 19, 1931, they ran into and against the rear end of defendant's GMC truck. They were going west and the truck was parked on the same side of the road on which they were traveling and headed west. The impact was with tremendous force and as a result the roadster was completely demolished. It caught on fire, and before the plaintiffs could be removed both were burned, Couch rather severely. The truck was not lighted with either a head or tail light or otherwise at the time, and the testimony of the three occupants of the roadster was that it was not seen by them until they were within six or eight feet of it. The truck was painted a blue-green or dark color, and it and its load assimilated in color the surrounding darkness. The driver of the truck was at the time underneath it trying to repair the battery, that had suddenly failed to function about thirty minutes before leaving him without either power or light, so that he could not display a warning light nor get out of the main-traveled road but was compelled to park where

he did. The roadster was equipped with good lights, fully complying with the law, and had efficient brakes. Where the accident happened the road was straight and level, with no dips or rises either way for several hundred feet. It was open desert on both sides. The road was dirt surfaced, about 17½ feet wide, with shoulders of blow sand on each side a few inches higher than the roadbed.

Assignments 2, 3 and 5 make the point that since the evidence conclusively shows that the plaintiffs and the driver of the Ford roadster were guilty of contributory negligence in not looking for and seeing the parked truck in time to avoid the collision with it, the court should have granted its motion for an instructed verdict or, failing in that, its motion for a new trial. There is no complaint of the instructions on the issue of contributory negligence. At most, such issue gave rise to a question of fact for the determination of the jury whose decision thereon was final. Section 5 of article 18 of the Constitution reads: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." This, and the numerous decisions under it, is decisive of the question.

Likewise the question as to whether defendant under the circumstances exercised ordinary care was submitted under proper instructions to the jury. Section 1623 of the Revised Code of 1928 provides that "a vehicle stopped upon a highway whether attended or unattended" shall have displayed upon it "one or more lamps projecting a white light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle and projecting a red light visible under like conditions and distance to the rear, except that no lights need be displayed upon any such vehicle when parked upon a highway where there is sufficient light to

reveal it within a distance of two hundred feet upon such highway.''

There is no question but that defendant's truck was equipped with lights conforming with this statutory provision. When the battery, the source of the light and power, ceased to function, the truck stopped and the lights went out, leaving the driver thereof no alternative except to stop or park in the road where he did. Whether it was the negligence of the driver, in failing to use proper means to warn others of the truck's location, or the negligence of the plaintiffs, that proximately caused the accident, was submitted to the jury in proper instructions.

Assignment No. 4 asserts that it was the ''independent'' negligence of plaintiffs 'that proximately caused the accident and their injuries and that therefore they should not be permitted to recover. They cite to sustain this contention *Franco* v. *Vakares*, 35 Ariz. 309, 277 Pac. 812. In that case we held that where a party supplied the owner and driver of an automobile with liquor, upon which the latter got drunk, and thereafter rode with him in his senseless and debauched condition and was killed in an untoward accident, his personal representative could not recover damages from the driver for the reason that it was his own misconduct or independent negligence that brought on the death. The characterization of the negligence in that case as *independent* was used to describe the situation there and not as a new kind of negligence. There is no analogy between the two cases and consequently the rule announced in the Franco case has no application.

Assignments 7, 8, 9, 10, 11 and 12 complain of the court's instructions giving the rule by which the plaintiffs' damages, if any, should be measured. There were given three such instructions, differing in language but conveying practically the same meaning. That they were abstractly correct is not ques-

tioned, but it is contended: First, that the repeated statement of the rule was not only cumulative but singled out and stressed the issue of damages and impressed the jury with the duty to return verdicts for plaintiffs. We share with defendant the feeling that there was too much repetition, but not in its deduction that the jury was misled thereby to favor plaintiffs. We think it more likely that the jury may have wondered if the purpose was not to aid their inexperienced and unlearned minds more completely to grasp the rule to govern them in estimating the damages. If cases were to be reversed on account of the courts' repeating the law in their instructions, few judgments would be safe.

Second, these three instructions are complained of because they submitted the same rule to measure the damages in both cases. The general character of the injuries sustained by the plaintiffs was the same, only those suffered by Couch were more severe and numerous. Because of the discrepancy in the number and severity of injuries, the rule of damages was not different, as claimed by defendant, although the amount of damages would necessarily be different. The jury recognized this, since in the Couch case the verdict was for $2,936 and in the Reid case $750.

Third, again it is said these instructions erroneously authorized the jury to assess damages for permanent injuries and loss of earnings both present and future, notwithstanding there was no evidence of the reasonable expectancy of the plaintiffs' lives. The only evidence of the character of the injuries suffered was that of plaintiffs. Dr. H. K. Wilson, who attended Couch and gave him first treatment, described his injuries as follows:

"His face had been split open from the bridge of the nose down—just to one side of the center of the nose—clear to the chin and all the soft tissues divided cleanly. And there was a gash under his left jaw

about 4 inches long—3½ or 4 inches long. Aside from the clean cut, the bones of the nose here—the turbinated and nasal bones themselves—were broken and splintered considerably. I picked out a good many pieces of bone there, several, anyway 4 or 5. And he was burned on the left leg practically from his hip nearly to the ankle, a pretty severe second degree burn. . . . And there was a fracture of his right leg . . . he had a pretty bad gash, on the right leg, the same one that was broken. . . . His arm, his left arm was burned and the hand. Some burns above the elbow extended clear down to the hand. That was more severe than the burn on the leg and in some places involved the entire skin—really a combination of first, second and third degree burns.''

This witness after stating he had seen Couch within a few days of the trial, which was a year after the injury, testified as follows, in answer to questions as to the condition of his left hand:

''It is useful as a paper weight mostly. He has practically no grip in that hand. The tendons have contracted and it is practically a useless hand for anything like manual labor.
''Q. Will or will not that hand become any more useful than it is now? A. I think not.''

Couch, it is seen, was badly and permanently injured. He must have suffered great mental and physical pain. His present earning ability was a total loss and in the future at least a partial permanent loss. The defendant contends that there was no basis in the evidence for future damages because the plaintiff failed to prove, by mortality tables or otherwise, his expectancy of life. The text in 17 Corpus Juris 875, section 181, states the rule as follows:

''Where the permanency is controverted, the mortality tables may be admitted to be considered by the jury in case they find that the injury is permanent. Direct evidence as to plaintiff's expectancy of life, however, is not essential, but the jury may deter-

mine such fact from their own knowledge and from the proof of the age, health, and habits of the person and other facts before them.''

Couch's age was not proved, but at the time he was employed as a pile driver, at a salary of $5 per day, and must have been in reasonably good health. By observation of his appearance the jury could estimate approximately his age and life expectancy. The smallness of the verdict, considering the serious and permanent character of his injuries, could well be sustained even if there were no evidence of the probable length of his life. The complaint alleged general damages in the sum of $2,650 and special damages in the sum of $286 to cover loss of time, hospital expenses and doctor's bills, and the evidence was ample to support these items.

Doctor Wilson testified that plaintiff John Reid sustained a fracture of the outer tip of the skull; a large cut on his left hand, at the base of the thumb; an apparent temporary paralysis of three fingers; a cut or two on his left leg and on the left side. This plaintiff stated that his skull was fractured; that one of his arms was burned; that he was bruised on his back and shoulders; that his hand was cut, as also one of his legs; that he was in the hospital for five days; that he was 19 years of age—18 at the time of the accident. There was no proof that his injuries were permanent; on the contrary, they were shown to be temporary. As to this plaintiff the instructions as to damages for permanent injuries and loss of earnings were erroneous (1) because there was no evidence to justify them, and (2) because there was no evidence that he had been emancipated. During his minority his earnings belonged to his parents, the rule being as stated in 31 Corpus Juris 1114, section 252:

''Since the parent is entitled to the services and earnings of the child so long as the latter is legally

under his custody or control, ordinarily an infant suing for personal injuries cannot recover for the impairment of his earning capacity during infancy, or for loss of time, or for expenses in curing his injuries, when, and only when, he is under the control of his parents; after emancipation he may do so." See, also, *Gulf, C. & S. F. Ry. Co.* v. *Grisom,* 36 Tex. Civ. App. 630, 82 S. W. 671; *Swift & Co.* v. *Holoubek,* 55 Neb. 228, 75 N. W. 584.

Assignments 13 and 14 assert that the verdicts were excessive and influenced by passion or prejudice. Defendant's argument on these assignments is not convincing, since it is based on those features of the instructions that authorized the jury to award damages for permanent injuries and loss of earnings, and not upon any antagonistic attitude of the jury towards the defendant.

We have left assignment No. 6 until last. It challenges the court's ruling in admitting in evidence, over defendant's objection, the deposition of Dr. P. L. Travers, who was John Reid's physician, on the ground that it was not properly authenticated by the officer who took it, etc. It is not necessary to determine the question raised, for if it is properly in the record it does not change the result.

The judgment in favor of Couch is affirmed, and the judgment in favor of Reid is reversed and remanded for a new trial; Couch to recover all his costs from defendant, and defendant one-half of its costs from Reid.

LOCKWOOD and McALISTER, JJ., concur.