WILLIAM PRETTYMAN *v.* JACOB HENRY TOPKIS.

(*October* 26, 1938.)

SPEAKMAN, J., sitting.

*Knowles and Knowles* for plaintiff.

*William H. Bennethum* (of Marvel, Morford, Ward and Logan) for defendant.

Superior Court for New Castle County, No. 121, January Term, 1938.

SPEAKMAN, J., delivering the opinion of the Court:

One of the reasons assigned in support of the motion for a new trial was filed after the expiration of the time fixed by the rules, and no objection to such filing has been made by the plaintiff. Without specifically passing upon the question of the right or propriety of this Court to consider said reason, it will be treated as if filed in due course, in as much as it will not affect the final disposition of the motion by this Court.

The defendant has offered nothing in support of some of his assigned reasons, and therefore they will be treated as having been abandoned by him. In his argument he makes the following contentions:

I. "The charge of the Court upon damages is fundamentally wrong, in that the jury was not instructed to pro rate the amount of its verdict to its present cash value."

II. "Where the charge of the Court is fundamentally wrong, objection thereto may be made upon a motion for a new trial even though no request was made for a particular instruction by the party objecting, and especially where there is no evidence of the life expectancy of the plaintiff."

III. "The verdict is excessive."

IV. "The Court erred in charging the jury with respect to damages to be recovered for pain and suffering in the future."

V. "Conduct of counsel for the plaintiff at the trial of the cause was so prejudicial to the rights of the defendant that a fair trial and a fair verdict could not be rendered in this cause."

The charge of the Court on the assessment of damages was:

"If your verdict should be for the plaintiff, it should be for such a sum as would reasonable compensate him for his pain and suffering in the past and such as may come to him in the future by reason of the injuries sustained in this accident, as well as for any perma-

nent disability arising therefrom, together with any expenses which he has incurred in attempting to cure himself of said injuries and from the result thereof."

Mortality tables were not in evidence and there was no request for special instructions as to the "present worth rule," and this should be kept in mind in considering what is said in *Thompson on Trials, Vol.* 2, *page* 1611, *par.* 2346, which is so strongly relied on by the defendant. In considering the distinction between non-direction and mis-direction it is there stated that "In general, then, while mis-direction is error, non-direction is not. But it will be often difficult in practice to distinguish between mis-direction and non-direction. It has been reasoned that, if there is a mere tendency in the charge to mislead the jury a party must ask additional explanatory instructions, in order to avail himself of its defectiveness in a court of error; but where it necessarily and actually misleads the jury, it is a fatal error. But where the charge is couched in such general terms as leave it doubtful whether the jury understand its application to the evidence, or though right in the abstract, may require modification by reason of something peculiar to the situation of the parties, which has escaped the attention of the judge; * * * there is no ground of error, unless the appropriate complementary instruction was requested and refused."

In this State mortality tables have been admitted in evidence in negligence cases where the injury to the plaintiff resulted in such a disability as to reduce his earning capacity, for the purpose of assisting the jury in determining the amount to assess as damages. *McMahon v. Bangs,* 5 *Penn.* 178, 62 *A.* 1098; *Messing v. Wilmington City Ry. Co.,* 5 *Penn.* 526, 64 *A.* 247; *Braderman v. Baltimore & P. R. Co.,* 3 *W. W. Harr.* (33 *Del.*) 206, 134 *A.* 56.

"While various forms of life tables are usually used for the purpose of assisting the jury in estimating the expectation of life, they are not essential. The jury may make their estimate from other

evidence as to the age, health, habits, and physical condition of the plaintiff." 17 *C. J., Damages, Sec.* 331.

The cases relied on by the defendant to illustrate the "present worth" rule have no application to the present case. They may be divided into the two following classes:

1. Those cases in which the courts erroneously charged in effect that the amount assessed for prospective damages should be the gross amount thereof.

2. Those cases in which the courts properly charged in effect that the amount assessed for prospective damages should be the "present worth" thereof.

The defendant cited no case in which it was held that the failure to charge that the amount to be assessed for prospective damages should be the "present worth" thereof, in the absence of a request therefor constituted error.

█ The duty to instruct, and effect of failure to instruct the jury as to reduction to present worth of damages for future loss on account of death or personal injury is fully covered in an annotation in 77 *A. L. R.* 1439. The concluding language of the annotator that "the long line of authorities making reasonable or fair and just compensation the basis of recovery for future loss upholds the reasoning of the decisions which hold that a mere nondirection as to the present worth rule is not a cause for reversal, there having been no request for specific instruction on the matter, the general instructions actually given being as a whole good, and the damages awarded not being excessive", is amply justified from his exhaustive review of the cases.

The charge on the assessment of damages in the instant case is fully supported by the language used by this Court in 1905, in its charge in the case of *Bowring v. Wilmington M. I. Co.*, 5 *Penn.* 594, 66 *A.* 369, and in scores of other cases since that date, as will fully appear from an examination of our State reports.

Future pain and suffering as an element of damage is considered in a lengthy annotation in 81 *A. L. R.* 423.

■ In a number of states it is held that damages may be recovered only for such future pain and suffering as it is reasonably certain will result from the injury received. This is known as the "reasonable certainty" rule.

■ The Courts of Connecticut, Pennsylvania, Texas, Utah and Wyoming have refused to adopt the "reasonable certainty" rule, and have held that if the jury is confined to a consideration of only such pain and suffering as it is reasonably probable will result from the injury, it is a sufficient safeguard against speculation and conjecture on the part of the jury. This is known as the "reasonable probability" rule.

The Courts in some other jurisdictions have followed rules which generally are more in accord with the "reasonable certainty" rule than with the "reasonable probability" rule.

It is stated in the annotation at page 454, that "The use of the word 'may' in instructions in connection with future pain and suffering, has been generally held not to be reversible error where it has appeared that its use did not invite speculation on the part of the jury as to future pain and suffering."

■ Whatever may be the rule in other jurisdictions the language "such a sum as would reasonably compensate him for his pain and suffering in the past or such as may come to him in the future by reason of the injuries sustained", as used in the instant case, or language of like effect, has been uniformly used by this Court in analogous cases for years past. See reference to the reported cases between the years 1903 and 1912 in the annotations in 85 *A. L. R.* 1010, at pages 1025 and 1026.

The defendant contends that there was an absence of evidence showing that there will be pain and suffering in the future to the plaintiff, occasioned by reason of his injuries.

The injuries were largely of an objective nature and to that extent their permanency was obvious to the jury.

Immediately following the accident the plaintiff was removed to the Delaware Hospital.

A physician called as a witness on behalf of the plaintiff testified that he was called and arrived at the hospital shortly after the plaintiff was brought in. Respecting the injuries resulting from the accident he testified in part as follows:

"Q. What was his condition when you saw him, to the best of your recollection? A. His hand was very badly mangled. All the muscles were torn off the palm of the hand. He had extensive lacerations—

 * * * * * * * * *

"Q. Dr. Jones, will you explain to the jury just what you found to be the condition of that hand when you saw it? A. The hand was badly mangled. There was a cut all the way through here (indicating) and the flesh was torn forward, and these tendons were all severed (indicating) the nerves were severed, and the blood vessels were severed, and besides that he had a head wound and brush burns throughout his body. I mean, there was several places, there were extensive lacerations on them, but the hand was the worst part, and he had a head wound.

"Q. Where was that head wound, Doctor? A. Well, I have forgotten where it was, but it was a head wound that had to be attended to. The man was in shock, and the man was clammy cold, and we gave him treatments for shock and operated on him and did the best we could with the hand, and got his head X-rayed. There was no fracture of the skull, but the man had a severe concussion.

 * * * * * * * * *

"Q. Now, as to that hand, Doctor, was there a hole clear through his hand? A. Yes. I say that the thing did penetrate. The hand was terribly mangled, so badly so that I wondered whether the best thing would be to amputate the hand. I knew that he wasn't going to get much use out of it. That is about as far as you can bend it now (indicating).

"Q. How about that thumb, Doctor? A. That is the condition now (indicating).

"Q. On account of what? A. On account of the accident. I attempted to suture it up, but it was too badly mangled.

"Q. What do you think about the recovery of it, Doctor? A. I think that he has got about as much use as he is going to get.. You can't flex it. You can't bend it down any more than that (indicating).

\* \* \* \* \* \* \* \* \*

"Q. What do you believe to be the incapacity of that hand and the arm? A. Of the hand I would say that he had about ninety per cent. disability.

"Q. He says he can't turn it around. What is that due to? A. That is about as far as he can get it back (indicating). That is due to nerve injury.

\* \* \* \* \* \* \* \* \*"

The plaintiff himself testified in part that as a result of his injuries: "It is so now that I can't sleep very good at night and I am so nervous." "If I hear an automobile horn blow I almost jump." "I can't do anything with that hand" (indicating the left hand). "I can't even tie my own shoe strings." "I have to do all I can with my right hand and then I have to have help." [Referring to dressing himself.] "I am nervous and then I don't feel a bit good no more. My hearing has gone back on me worse than it was before I was struck. I could hear an ordinary conversation before I was struck but I have to use this thing here now" (indicating). [An acousticon.]

In an annotation in 115 *A. L. R.* 1149, in which the necessity of expert evidence to establish future pain and suffering is discussed, it is stated that "if the injury is of an objective nature (such as the loss of an arm, leg, or other member) the jury may draw their conclusions as to future pain and suffering from that fact alone (the permanency of such injury being obvious)."

In *Atkinson v. Taylor,* 13 *Ga. App.* 100, 78 *S. E.* 830, it was said that [page 831] "Inasmuch as enforced idleness or diminished efficiency in offices of labor is calculated to give rise to mental distress, it is not error to describe the thing by its effects, and call it pain and suffering."

■ The New Century Dictionary defines "Pain" as "Acute discomfort of body or mind, bodily or mental suffering or distress", and "Suffering" as "The undergoing or enduring of pain or distress, or a particular instance of this."

The defendant seeks to have the meaning of the words "pain" and "suffering" so restricted as to exclude therefrom "pain" and "suffering" which is mental. I am unwilling to so restrict their meaning.

■ From the nature of the injury and the testimony introduced on behalf of the plaintiff there was sufficient evidence to submit to the jury for its consideration future pain and suffering as an element of damage.

Another ground urged for a new trial is that the damages are excessive. As above stated, it was shown by **medical** testimony that the plaintiff's left hand was rendered about ninety per cent. useless by the accident. He also sustained other injuries. At the time of the accident he was about 54 years of age. He testified that he was a painter by trade and that in the year 1936 he earned about nine hundred dollars and that for the year 1937 he averaged about thirty dollars per week from May until the time of the accident.

The defendant in his argument suggests that the only damages shown were hospital and doctor bills amounting to between one hundred dollars and two hundred dollars, that the plaintiff by the declaration limited his recovery to two thousand dollars for loss of wages, and that therefore the plaintiff was awarded not less than two thousand five hundred dollars for pain and suffering. The defendant apparently overlooks the fact that in addition to the claim for hospital and doctor bills and loss of wages as special damages, the plaintiff claimed general damages. The gross amount claimed by the declaration for both general and special damages was the sum of twenty-five thousand dollars.

■ In addition to pain and suffering both past and future, the jury could properly take into consideration in arriving at its verdict the loss to the plaintiff occasioned by his permanent injuries, not only the impairment of his earning ability, but also the inconvenience which would follow in his other relations of life.

"Because the amount of damages suffered is a matter peculiarly within the province of the jury, generally speaking, a Court will not, therefore, set aside a verdict merely because they would have awarded a greater or less sum." *Campbell v. Brandenburger,* 5 *W. W. Harr.* (35 *Del.*) 203; 162 *A.* 354, 355.

■ I do not consider the verdict unreasonably large.

The remaining ground urged by the defendant is that the conduct of counsel for the plaintiff at the trial was so prejudicial to the rights of the defendant that a fair trial and a fair verdict could not be rendered in the case because as it is claimed (a) "That incompetent questions were knowingly asked a witness in order to obtain an advantage with the jury" and (b) "That an improper remark was made by one of the attorneys for the plaintiff accompanied by a threatening attitude."

At the trial one of the attorneys for the plaintiff in his cross-examination of Edward Smallwood, a witness for the defendant, for the purpose of impeaching his credibility asked him the following question: "Now, Mr. Smallwood, haven't you been convicted of a felony—of breaking and entering?" To which the witness replied: "I were, in 1924."

Immediately thereafter the record shows the following, which includes the questions and remarks about which the defendant complains:

"X. I will ask you if you haven't had in the neighborhood of 25 charges ranging from drunkenness to committing highway robbery?

"Mr. Bennethum: I object, and I request the Court to instruct counsel that it is highly improper.

"Speakman, J.: Finish the question.

"X.—and highway robbery since 1924?

"Speakman, J.: The objection is sustained.

"Mr. W. Thomas Knowles: Now, may it please the Court, they put this man on the stand, and they asked him his business.

"Speakman, J.: (Interrupting) Your question is improper because there is too much included in it. You have included drunkenness, for instance. It is not a proper question.

"X. I will ask you if you weren't paroled in 1924 by Judge Rice on a charge of breaking and entering and that a few months afterwards you were not found violating your parole and committed to the workhouse for the term of two years?

"Mr. Bennethum: I object. That is not a conviction.

"Speakman, J.: The objection is sustained.

"Mr. Bennethum: Mr. Knowles knows this is highly wrong.

"X. I will ask you if you have ever been charged with a breach of the peace?

"Mr. Bennethum: I object.

"Speakman, J.: The objection is sustained. (Exception noted for the plaintiff.)

"X. Have you ever been charged with the offense of larceny in this state?

"Mr. Bennethum: I object; "charged with", your Honor.

"Speakman, J.: The objection is sustained. (Exception noted for the plaintiff.)

"Mr. W. Thomas Knowles: That is all.

"Mr. Bennethum: That is all.

"Mr. W. Thomas Knowles: May I ask him one question?

"Speakman, J.: Yes, indeed.

"X. Have you been paid any money to come into this Court and testify? A. No, sir.

"X. By any person? A. No, sir. Why?

"X. Have you been promised anything to come into this Court and testify for any sum of money? A. I was.

"X. How much sum of money? A. They didn't tell me what sum of money.

"X. They didn't tell you what sum of money? A. No.

"Mr. W. Thomas Knowles: That is all.

"Speakman, J.: No; that isn't all.

"By Mr. Bennethum:

"RQ. Were you asked to come into Court and testify, naming any people's names, who asked you to come in here and promised you money, without naming the sum? A. Mr. Knowles.

"By Mr. W. Thomas Knowles: "Q. Anybody else? A. No, sir.

"By Mr. Bennethum:

"RQ. Which Mr. Knowles? A. This man here (indicating Mr. William W. Knowles).

"Mr. William W. Knowles: You're a liar.

"By Mr. W. Thomas Knowles:

"Q. You are not here as a witness for Mr. Knowles, are you? A. I am not.

"Q. You are dead set against him, aren't you?

"Mr. Bennethum: I object.

"A. I am not.

"Mr. W. Thomas Knowles: All right. That is all." (A short recess was here taken.)

 This Court has consistently held that it is improper, for the purpose of impeaching the credibility of a witness, to ask him if he had ever been convicted of any particular "misdemeanor" or whether he had ever been "charged" with the commission of any offense. This rule is so well settled that supporting authorities need not be cited.

The witness was not an unwilling witness for the defendant and the remark "You're a liar" by, and the threatening attitude of the attorney for the plaintiff were made under great provocation, and for that reason I am not inclined to unduly criticise him. I am sure if he had taken time for reflection the remark and threatening action would not have occurred.

 The objectionable remark and action, while highly improper, had no relation to the accident or the liability therefor. In no event can it be considered that the objectionable remark had any application to the testimony of the witness other than to the answer next preceding the remark.

Assuming that the improper questions and remark tended to further impeach the witness, it should be borne in mind that his testimony concerning the accident and the responsibility therefor was of the same general character as that given by other witnesses for the defendant.

In *Woolley's Delaware Practice, Sec.* 742, it is said: "In the progress of a trial, counsel should make no statements to the jury that are not supported by the evidence, but if such statements are made and not objected to at the time, the verdict will not be disturbed, unless it appear that the words spoken influenced the jury."

In the application of the rule I can see no difference in effect between such a statement made to the jury and one made to a witness in the presence of the jury.

The case of *Blatz v. Wilson*, 5 *W. W. Harr.* (35 *Del.*) 546, 170 *A.* 808, which is relied on by the defendant cannot be considered as an authority in this case. In that case the plaintiff was seeking to recover damages as the result of an automobile collision. In the declaration it was alleged that the plaintiff suffered personal injuries and also damages to his automobile. At the trial in the Court below the plaintiff was asked the following question by his counsel: "During the recess, my friend, counsel for the defendant, reminds me that there is no claim on your part for damages to your machine; is that correct?" To which the plaintiff replied: "No claim I have. The insurance company——." There a new trial was awarded because of the failure of the Court below to instruct the jury to disregard the reference to the words "the insurance company," there having been a motion for a new trial [mis-trial] immediately following the reference and also at the close of the plaintiff's case, with exceptions duly noted to the Court's unfavorable ruling thereon, while here no such motion was made.

Counsel for the defendant objected to all of the said improper questions and his objections were sustained. With respect to one of them he requested the Court to instruct Counsel for the plaintiff that "it is highly improper" which request was substantially complied with, otherwise, although ample opportunity was given to the defendant's counsel to make such motion or application as he deemed proper con-

cerning the improper questions, remark and threatening attitude, no motion or application was made.

It does not appear in this case that the improper questions or the improper conduct influenced the jury in arriving at its verdict. This being so, and there having been no motion or application made with respect to such questions or conduct by the defendant's counsel until after verdict, this Court is not warranted in disturbing the verdict by reason thereof.

The motion for a new trial will be refused and the rule will be discharged.