TANIA B. COLLINS v. EQUITABLE LIFE INSURANCE COMPANY

(No. 8964)

Submitted February 6, 1940. Decided March 12, 1940.

C. *Brooks Deveny*, for plaintiff in error.
*Kermit R. Mason*, for defendant in error.

HATCHER, JUDGE:

Plaintiff obtained a verdict and judgment for "double indemnity additional accidental death benefit" upon an insurance policy issued by defendant on the life of her

husband. The double liability depended upon death resulting from bodily injury caused exclusively by accidental means, evidenced by a visible external mark on the body.

It was the matutinal custom of the insured, a large man aged forty-three years, to proceed by automobile to within about four blocks of his office, park his car, and then walk the remaining distance. The time he required for the walk is not shown, but it does appear that prior to February 28, 1938, he was a vigorous man, seemingly in good health, and walked rapidly. On the morning of that day he was observed to park his car at the usual place about 7:20 and walk away in his customary manner in the direction of his office. The streets were then icy. No witness saw him thereafter until he reached his office about 7:30, his usual time, when, according to an office associate, he was "very much upset and in quite a bit of pain * * *. He would lay down and then get up * * *. He was moaning and groaning. He said he had slipped on the icy pavement and fallen." Testimony was admitted of like statements made to two persons in a nearby store (who had him taken home in the store truck) and to his attending physician. The latter found him suffering from tingling of both arms below his elbows and from pain in the upper abdomen and chest; other witnesses say his arms were bruised. After about a week he returned to work. His suffering persisted, and he died April 10, 1938. An autopsy was not held. His death was attributed to coronary thrombosis by his physician. He and two other physicians testified that, in their opinion, the thrombosis could have resulted from the fall. Another physician thought not.

Defendant's main contention is that for a statement to be admissible as part of the res gestae, the declaration must be contemporaneous with the main facts; that there is no evidence of the place where decedent fell or how long he had fallen before arriving at his office, and therefore his declaration of falling was not shown to be

contemporaneous with the fall and was not admissible. The testimony that he walked away from his parked car in his customary manner, i. e., rapidly, warrants the inference that he was then still in normal condition. The testimony that upon arriving at his office, he gave visible and audible evidence of extremely severe pain, warrants the inference that it commenced somewhere between his car and the office. Another reasonable inference is that his suffering commenced near the office for his distress was so apparent, that he could hardly have proceeded very far unnoticed. If this inference is correct his declaration at the office was likely made within a very few minutes after his fall, and would be considered as reasonably contemporaneous with it, for in few cases is a statement "absolutely simultaneous with the act it illustrates." Annotation, Res Gestae, 95 Am. Dec. 58. Accord: 22 C. J., Evidence, sec. 543. But spontaneity rather than contemporaneity is now the generally recognized test of admissibility. "The spontaneity of the utterance is the guaranty of its trustworthiness." *Perry* v. *Haritos,* 100 Conn. 476, 124 Atl. 44, 47. Accord: *Starcher* v. *Oil Co.,* 81 W. Va. 587, 599, 600, 95 S. E. 28; Wigmore, Evidence (2d Ed.), secs. 1747 and 1750; 22 C. J., *supra,* sec. 549; 20 Am. Juris., Evidence, sec. 662. So, even if he fell near his car and his statement was not made until nine or ten minutes afterwards, his conduct when it was made, demonstrated that he was still subject to the nervous excitement of the event which initiated his suffering, and gave to his utterance "an inherent guaranty of trustworthiness." Jones, Ev. on Civil Cases, sec. 344. We are therefore of opinion that his statement upon arriving at the office was properly admitted.

We are aware that a number of authorities have said there must be "a main or principal fact", which the declaration illustrates. Jones Comm. Evidence (2d Ed.), sec. 1193; 22 C. J., Evidence, sec. 536. Some authorities go further, saying "The act itself must be first established before the illustrative declarations can be admitted."

20 Am. Juris., Evidence, sec. 666. (This rule was taken from the annotation in 95 Am. Dec. 66, where a number of cases are cited.) Mr. Wigmore says these limitations are "spurious", having been borrowed from what he terms "the verbal act doctrine," and having no proper place in the doctrine of res gestae. He further says that expressions such as those above are "frequent enough," but that there seems to be no ruling in the United States turning directly upon such "supposed limitations." Wigmore, Evidence (2d Ed.), sec. 1752. Whether or not his criticism is well taken, there is unquestionably much confusion on the subject of res gestae. Jones, *supra*. This, however, seems settled: When a statement is wholly detached from the act it would explain, it is not admissible under either *the verbal act* or the res gestae doctrine; but when appearances indicate that one has suffered an injury, a statement by him, if spontaneous and reasonably coincident with, and explanatory of, the occurrence, may be regarded as a part of it, and be competent evidence under the res gestae doctrine.

Decedent's statement at the store was not made until approximately an hour after the accident. The interval of time which had elapsed and the circumstances under which that statement was made rendered it narrative and its admission erroneous. *Corder* v. *Talbott*, 14 W. Va. 277. But since it was the same as that made at the office and merely cumulative, we regard its admission as not prejudicial.

Testimony of the attending physician that decedent told him of falling was first brought out on cross-examination; for which reason the circuit court permitted the physician on redirect examination to testify that the deceased said "he had slipped on the ice, and fallen on his back, striking both elbows." We are of opinion that the ruling was proper. Plaintiff further introduced in evidence a copy of the death certificate of the insured returned by this physician, wherein the manner of the injury was stated as "Fall on slippery, icy st." (This copy was not certified by the state registrar of vital

statistics, and did not have the significance provided in Code, 16-5-21.) We do not see the competency of the certificate, because the physician knew nothing of the manner of the injury but what the deceased had told him. But the jury understood this and we can infer no prejudice to the defendant.

Defendant also insists that the hypothetical question propounded the physicians by plaintiff was insufficient, because it did not show the force of decedent's fall. The question embodied the symptoms of decedent following the fall, and it would seem that the physicians could estimate the force of the fall from the symptoms.

The judgment is affirmed.

*Affirmed.*