PATRICIA ANN LAWRENCE, *an infant, Etc.*

*v.*

JACK WILLIAM NELSON

(No. 11069)

Submitted January 26, 1960.    Decided March 8, 1960.

136

*Steptoe & Johnson, Carl F. Stucky, Jr.,* for plaintiff in error.

*Lane & Preiser, John J. Lane,* for defendant in error.

BERRY, JUDGE:

This is an action of trespass on the case brought by the plaintiff, Patricia Ann Lawrence, an infant, who sues by Marguerite Miller, her next friend, to recover damages from the defendant, Jack William Nelson, for personal injuries sustained by the plaintiff as a result of an automobile accident which occurred on the West Virginia Turnpike near Milepost 81. The case was tried in the Common Pleas Court of Kanawha County in May, 1958, before a jury which rendered a verdict of $15,000.00 for the plaintiff, upon which judgment was entered on September 17, 1958. The Common Pleas Court overruled a motion to set aside the verdict and the Circuit Court of Kanawha County refused to grant a writ of error. Upon petition to this Court, a writ of error and supersedeas was granted on June 9, 1959.

The declaration charged the defendant with exceeding the speed limit, failing to keep on his side of the road, failing to keep his vehicle under proper control and to operate it in a careful and prudent manner.

The evidence as to the cause of the accident is conflicting. It occurred about 10 p.m. on April 15, 1957, on the West Virginia Turnpike near the Marmet overpass and Milepost 81. The plaintiff was a passenger in a 1956 Ford automobile, driven by her husband, Jerry M. Lawrence, and owned by her mother-in-law, Marguerite Miller. The automobile in which the plaintiff was riding was proceeding in a southerly direction from Charleston. The defendant, Jack William Nelson, was driving alone in a 1956 Lincoln automobile, owned by him, in a northerly direction from Beckley toward Charleston. The version of the accident by Lawrence and the plaintiff is that they were following another car about 700 feet ahead of them, and after the defendant, Nelson, met and passed the automobile in front of them, he drove his car over to their side of the road and Lawrence then steered his automobile to the left in order to avoid hitting the Nelson car, and when the Nelson car was about 125 feet away it was turned back onto his, Nelson's, side of the highway, and by the time Lawrence was over on the berm on Nelson's side of the road, Nelson's car was driven off the pavement and collided with the Lawrence car on the berm. The left front of the Nelson car hit the left front of the Lawrence car and both cars were stopped as a result of the impact. There is some conflict in the evidence with regard to how much of the cars was off the concrete part of the road and as to their exact positions, but it appears that both automobiles were either completely or almost completely on the berm of what was the proper side of the highway for the Nelson car, but the wrong side for the Lawrence car, and the cars were stopped almost parallel with each other, with the front ends pointing toward the Kanawha River or the eastern

side of the highway. The cars collided almost head-on and considerable damage was done to each car, and as a result of the collision Lawrence was dazed and the plaintiff and Nelson were seriously injured.

The speed limit on the Turnpike at the scene of this accident is 60 miles per hour. Lawrence stated that he was driving about 55 miles per hour and Nelson denies that he was speeding. Nelson was rendered unconscious and lost his memory as a result of the accident and has only partially regained it. What he does remember up to the time of the accident is the direct opposite of Lawrence's testimony. Nelson says he saw two sets of headlights approaching him and that he turned his car to his own side in order to get out of the highway, whereupon, his car was struck. There is a slight curve near the scene of the accident and Nelson states that he saw the two sets of headlights coming toward him as he entered the curve.

Several witnesses testified on behalf of the plaintiff to the effect that they smelled the odor of alcohol on Nelson at the time he was brought into the hospital in Charleston following the accident. However, this testimony was contradicted by several witnesses who testified on behalf of Nelson and who were near him in the hospital, their testimony being that they did not detect any odor of alcohol on Nelson. Nelson was unconscious at the time and nothing was testified to except the odor of alcohol. The defendant offered several witnesses to prove his reputation for sobriety, to which the plaintiff objected, and the court refused to allow such evidence to be considered.

There were no witnesses to the accident other than the occupants of the two cars. The first motorist to arrive on the scene was Frank K. Hereford. Mr. Hereford stated that when he arrived on the scene there was dust settling around the cars; that steam was coming from them and the cars were close together; the plaintiff was lying in the road and the defendant was still in his automobile; Lawrence was

standing near where the concrete meets the berm and was waving to stop him; that Lawrence was quite excited and urged him to get an ambulance. Mr. Hereford further stated that within two to five minutes after he arrived on the scene he asked Lawrence what happened, and Lawrence told him that he was proceeding south and observed the other car approaching, that it appeared as though the other car was not going to make the curve and he, realizing that the car was going to strike him, cut his car to the left, and, as he did so, the driver of the approaching car cut its wheels to the right and the two cars collided. This witness further says that he did not observe any skid marks made by the Lincoln car. However, State Trooper Heflin, who testified for the defendant, stated that his investigation disclosed that skid marks of 81 feet and 36 feet were made by the Lincoln automobile on the berm leading up to where the two cars collided.

The statement by Hereford as to what Lawrence told him when he arrived at the scene of the accident is almost identical with that made by Lawrence during the trial. The defendant objected to the admission of this evidence by Hereford on the theory that it was not part of the *res gestae,* because it was in response to a question and would result in Lawrence testifying twice. However, almost the same statement was introduced in evidence by plaintiff on cross examination of the state police officer, Heflin, who testified on behalf of the defendant, and no objection was made by the defendant to the introduction on cross examination of this statement elicited from his own witness.

The plaintiff introduced Clarence S. Bruce of Ft. Myers, Florida, who testified as an expert witness and who qualified as a "traffic accident analyst", having been employed by the Federal Bureau of Standards during which time he developed formulas and tables relating to the reaction and stopping time, roadability of cars on curves, etc. His duties with the govern-

ment were to analyze accidents in order to determine who was at fault so that the government could decide whether to pay for damages where a government vehicle was involved in an accident with a private citizen. The defendant objected to the questions asked this witness on the ground that they were not proper hypothetical questions, but later cross examined him and supplied additional facts with regard to the theory of the defendant, and after the witness had completed his testimony and had been excused by the court, a motion was made to strike his evidence and instruct the jury not to consider it on the ground that his calculations were not correct with regard to all the facts. On cross examination Bruce stated, in answer to questions by the attorney for the defendant, that his calculations would not be correct or applicable if the skid marks were made by the defendant's automobile, as testified to by the state trooper, because he had not taken such evidence into consideration in his calculations. No objection was made at any time to the testimony of Bruce as an expert witness. The court overruled the motion made by the defendant relative to this witness.

The plaintiff was seriously injured in the accident. She received cuts on both legs near the knees, leaving large scars, a fractured pelvis, four fractures of the vertebrae, a severely injured thumb and many bruises and abrasions. Some of the injuries are of a permanent nature. She was pregnant at the time of the accident, and as a result of the injuries received, was forced to undergo a Caesarean section operation in the delivery of her child, and, according to testimony given by Dr. Leo M. Seltzer, will be unable to bear other children except by this method.

The defendant assigns thirteen grounds of error in his brief for reversal but many of them are repetitious and can be reduced and summarized as follows: (1) The verdict is contrary to the law and evidence, and is excessive; (2) it was error to admit certain testimony of the witness Hereford because it does

not constitute *res gestae*; (3) it was error to admit the testimony regarding the odor of alcohol and then error to refuse to allow the defendant to introduce evidence with regard to the reputation of defendant as to his sobriety; (4) it was error to allow the jury to consider the expert testimony of the witness Bruce; and, (5) it was error to give instructions 2 and 5, offered by the plaintiff.

We shall consider the assignments of error in the order listed. The first assignment is that the verdict is contrary to the law and evidence, and if this assignment is well taken, there is no need to go any further in the discussion of this case, because then it would be a question of law for the court and a directed verdict should have been given. However, we are of the opinion that this case was one for jury determination. The evidence of the plaintiff and of the defendant, as to the cause of this accident, is in direct conflict. Where this situation exists, the case should be submitted to the jury for its determination. 19 M.J., Verdict, §32, page 521; *Davis v. Pugh,* 133 W.Va. 569, 57 S.E.2d 9; *Wilson, Admx. v. Edwards,* 138 W.Va. 613, 77 S.E.2d 164. It was held in the second point of the syllabus in the case of *Prettyman v. Hopkins Motor Co.,* 139 W.Va. 711, 81 S.E.2d 78, that: ''When the evidence is conflicting, or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them, the question of negligence is for the jury.'' If the jury had believed the evidence of the defendant, that he was driving his automobile on his side of the highway and did not drive onto the wrong side, or the plaintiff's side, and that the accident occurred on the berm, on defendant's right side, the jury should have found for the defendant and the verdict would not have been set aside. The jury, however, believed the evidence of the plaintiff, that the defendant drove his car onto the wrong side of the highway and then turned back to his right side of the highway where plaintiff's driver had gone to avoid colliding with

the automobile of the defendant. Their verdict was based on this evidence and cannot be set aside by this Court unless some error of law was committed in the trial of the case. *Lawson v. Dye,* 106 W.Va. 494, 145 S.E. 817; *Gilbert v. Ice Cream Co.,* 117 W.Va. 107, 184 S.E. 244; *Thrasher v. Utilities Co.,* 138 W.Va. 166, 75 S.E.2d 376; *Clay v. Walkup,* 144, W. Va. 249, 107 S.E.2d 498.

This question is clearly answered in the case of *Gilbert v. Ice Cream Co., supra,* with facts quite similar to those in the case at bar concerning the cause of the accident. In the *Gilbert* case the defendant's truck was about 85 or 90 feet away and on the plaintiff's side of the road when the automobile in which the plaintiff was riding was steered to its left side of the road to avoid a collision, but the defendant's driver turned his truck to the right and the accident resulted. In the case at bar, according to the plaintiff's evidence, the automobile in which the plaintiff was riding was turned to its left, in order to avoid a head-on collision, as in the *Gilbert* case. The defendant's automobile was about 700 feet away on its right side of the highway and passing another automobile which was in front of the automobile in which the plaintiff was riding when it was first observed by the plaintiff's driver and was steered to its left and driven over to the plaintiff's side of the road. When the defendant's automobile was about 125 feet away it was turned back on its side of the highway where the plaintiff's car had been driven and the cars collided, all of which would have had to be done within a very few seconds, because of the combined speed of the approaching automobiles. It was held in point 1 of the syllabus in the *Gilbert* case that: ''It is ordinarily a question of fact for the jury to determine whether or not a motorist is justified in turning to the left in order to avoid another vehicle coming from the opposite direction on the wrong side of the road.''

The assignment of error with regard to the verdict

being excessive apparently was abandoned by the defendant, as it was not discussed in the defendant's brief. However, we are of the opinion that it is without merit because the plaintiff received serious injuries as a result of this accident and the testimony is uncontradicted that some of the injuries are of a permanent nature. Therefore, the verdict is supported by the evidence and there is no indication in this case that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410; *Davis v. Pugh,* 133 W.Va. 569, 57 S.E.2d 9.

In the second assignment of error listed above, the plaintiff claims it was error to allow the witness Hereford to testify as to what Lawrence told him pertaining to the cause of the accident, in answer to his question, when the witness Hereford arrived upon the scene immediately following the accident. It is the contention of the defendant that the statements made by Lawrence to Hereford did not constitute *res gestae,* and therefore are not admissible as being hearsay evidence. This statement was made soon after the accident occurred, while dust from the accident was settling and steam still coming from the two automobiles, when Lawrence's wife, the plaintiff, was lying on the highway, seriously injured, and Lawrence visibly excited. We are of the opinion that this evidence constituted *res gestae* under the holdings of decided cases in this state with regard to this question. See *Starcher v. Oil Co.,* 81 W.Va. 587, 95 S.E. 28. It was held in the case of *Blagg v. Railroad Co.,* 83 W.Va. 449, 98 S.E. 526, point 2 of the syllabus, that: "Whenever a statement is made by one under such circumstances that it may be regarded as spontaneous and as the direct result of a transaction to which he was a party, it becomes a part of the transaction itself, and if proof of the fact is material to the inquiry being made such statement will be received in evidence as tending to establish

such fact.'' *Res gestae* is an exception to the hearsay evidence rule. Such statements are admitted in the evidence on the theory that the person making a statement under circumstances of stress or excitement would not have the opportunity to make a false statement, and spontaneity rather than contemporaneity is now the generally recognized test of admissibility. The spontaneity of the utterance is the guaranty of its trustworthiness. It would make no difference that the statement in this case was made by Lawrence some five or ten minutes after the accident occurred. *Collins v. Ins. Co.*, 122 W.Va. 171, 8 S.E.2d 825; *Robertson v. Railway Co.*, 87 W.Va. 106, 104 S.E. 615; *Chesapeake & O. Ry. Co. v. Mears*, 64 F. (2d) 291.

It will be remembered that Lawrence's testimony, which followed that of Hereford, was the same with regard to the statements in question, as well as being the same as the testimony of the state police officer who testified on behalf of the defendant, and who on cross examination read a statement taken from Lawrence, which is almost identical with that testified to by Hereford, without any objections on the part of the defendant. Because of the failure of the defendant to object to such testimony given, even on cross examination, by a witness called by him, it would, no doubt, constitute a waiver of this matter, and in any event, the effect was cumulative and would not be regarded as prejudicial error. *Whitten v. McClelland*, 137 Va. 726, 120 S.E. 146; *Scholz v. Standard Acc. Ins. Co.*, 145 Va. 694, 134 S.E. 728; *Powell v. Young*, 151 Va. 985, 144 S.E. 624, (Reversed on rehearing on other grounds, *Powell v. Young*, 151 Va. 985, 145 S.E. 731.)

The third assignment of error with regard to the admission of evidence with reference to the odor of alcohol being detected on Nelson after the accident, and the refusal of the court to allow him to introduce evidence regarding his reputation for sobriety, is without merit. In the first place, such evidence, if

properly proved, would be admissible in determining whether or not due care was used under the circumstances and for the purpose of showing the probability of negligence. 65 C.J.S., Negligence, §143, page 784; *Dokus v. Palmer,* 33 A. 2d 315, 130 Conn. 247. Also, as a general rule, it is not proper to use witnesses to show the reputation or character of a person in a civil suit unless criminal intent is involved on the part of the defendant. *Hess v. Marinari,* 81 W.Va. 500, 94 S.E. 968; *Horton v. Tyree,* 104 W.Va. 238, 139 S.E. 737. In addition to the above discussion with regard to this assignment, the court instructed the jury in Instruction Number 2, offered by the defendant, that there was no evidence in this case upon which it could find that the defendant was intoxicated or driving his automobile at the time of the accident while under the influence of intoxicants. In other words, the court in effect told the jury not to consider this matter, and if there was error with regard to it, it was cured by this Instruction.

The fourth assignment of error deals with the defendant's contention that the testimony of the witness, Bruce, was improperly admitted for jury consideration. This witness is a mechanical engineer who specialized in automotive engineering. He is highly trained as a "traffic accident analyst" and had technical knowledge which the jurors did not have. If proper hypothetical questions were propounded to this witness with facts assumed which had been properly proved, it would appear that he was qualified to answer such questions, and the assumed facts used as a basis for hypothetical questions do not have to be based on undisputed testimony. *Fruit Co. v. Brydon & Bro.,* 85 W.Va. 609, 102 S.E. 231; *Byrd v. Railway Co.,* 123 W.Va. 47, 13 S.E.2d 273. No objection was made by the defendant to this witness testifying as an expert witness during the trial of the case. However, three perfunctory objections were made by the defendant with regard to the form of certain questions, but no rulings were made thereon

by the trial court. Therefore, this assignment cannot now be considered by this Court because it was waived. 88 C.J.S., Trials, §114, page 229; *Wilson v. Dalton Adm'r.,* 311 Ky. 285, 223 S.W.2d 978. Then too, the defendant cross examined this witness and asked him questions assuming other facts placed in evidence by the defendant which were proper, and answers were obtained which the jury could consider in connection with the weight to be given to the testimony of this witness as to its application after considering all of the evidence dealing with this matter, and it was only after this witness had been excused by the court that a motion was made to strike his evidence and instruct the jury not to consider it. The general reasons given for such motion were that counsel for the defendant did not think his calculations were correct, and that they were based on erroneous assumption of facts. No attempt was made to point out the specific reasons for the statements, and the motion was overruled by the trial court and exceptions taken by the defendant. The matter involved in this motion deals with the weight to be given to the evidence in question, and is a matter for jury determination. *Bank v. Hannaman,* 63 W.Va. 358, 60 S.E. 242.

The fifth and last assignment of error to be considered is the contention of the defendant that Instructions 2 and 5, offered by the plaintiff and given by the court, constituted reversible error.

Instruction No. 2 of the plaintiff is not argued in the defendant's brief and for this reason it would appear that the assignment of error based on this Instruction has been abandoned. This Instruction merely told the jury that if the defendant violated the statute, such violation constituted prima facie negligence on the part of the defendant, and if the jury found that such prima facie negligence was the proximate cause of the plaintiff's injury, then it may find for the plaintiff. The objection to Instruction No. 2 is that it did not say that the prima facie negligence could be rebutted, but Instruction No. 10, offered by

the defendant and given by the court, did tell the jury that this prima facie negligence could be rebutted. Plaintiff's Instruction No. 2 was not a binding instruction and all instructions given to the jury must be taken and read together. *Curfman v. West Penn,* 113 W.Va. 84, 166 S.E. 817; *Davis v. Fire Creek Fuel Company,* 144 W. Va. 537, 109 S.E.2d 144. Therefore, if there was any error in the giving of Plaintiff's Instruction No. 2, it was cured by Defendant's Instruction No. 10, given by the court.

The objection to plaintiff's Instruction No. 5, given by the court, is that it told the jury it could take into consideration the age of the plaintiff in estimating damages in connection with her injuries and her inability to perform the normal functions of life in the future, as well as future humiliation and embarrassment when there was no proof introduced during the trial as to the plaintiff's age, and, therefore, the instruction was not supported by the evidence. It is also the contention of the defendant that the jury cannot consider her life expectancy because no mortality tables were introduced. It is true that no mortality tables were introduced in evidence in this case, but this matter usually comes up by objections being made to the introduction of mortality tables and it has been held that it is not error to introduce such tables and they are usually considered a safe guide to be considered, along with other facts and circumstances. *Culp v. Railway Co.,* 77 W.Va. 125, 87 S.E. 187; *Virginia & S.W. Ry. Co. v. Bailey,* 103 Va. 205, 49 S.E. 33; 25 C.J.S., Damages, §81, page 592.

However, it is held that mortality tables are not the exclusive evidence admissible to establish life expectancy and the jury may determine such facts from their own knowledge and from proof of age, health, habits of the person and other facts before them. 25 C.J.S., Damages, §81, page 594; *Donoghue v. Smith et al.,* 114 Conn. 64, 157 A. 415; *S. A. Gerrard Co. v. Couch,* 43 Ariz. 57, 29 P.2nd 151; *Prettyman v. Topkis,* 39 Del. 568, 3 A.2d 708.

During the trial of this case a statement was made in the presence of the jury by the trial court that the plaintiff was nineteen years of age, and in response to this statement by the court, the attorney for the plaintiff answered that she was nineteen years of age. No objection to these statements was made by the defendant's attorney and his only response in connection therewith was that she was a married woman. The jury observed the plaintiff for several days and could personally see her physical condition as well as her actions and expressions. Her husband testified during the trial that he was twenty years of age. The declaration, which is available for every purpose of the trial, and need not be formally put in evidence in order to be considered by the jury, showed that the plaintiff was an infant under the age of twenty-one years. All of these factors taken together would be sufficient for the jury to determine the age of the plaintiff in connection with her life expectancy, in order to award damages for future pain and suffering. The uncertain factor of life expectancy would be little varied by a small error in estimation of age. Uncertainty of this factor prevents absolute accuracy in such cases.

It is also the contention of the defendant that plaintiff's Instruction No. 5 is erroneous, because it told the jury that they could take into consideration the plaintiff's life expectancy in considering compensation for future pain and suffering, and that age should not be considered when awarding damages for pain and suffering. It has been repeatedly held that damages can be awarded for future pain and suffering. *Bailey v. Transfer Co.*, 135 W.Va. 730, 65 S.E. 2d 82; *Gwaltney v. Reed*, 196 Va. 505, 84 S.E.2d 501. The age or life expectancy of the plaintiff would, by necessity, have to be taken into consideration in order to award such damages.

It is true that the future effect of an injury upon the person injured must be shown with reasonable certainty in order to authorize a recovery of damages

for a permanent injury. *Wilson v. Fleming,* 89 W.Va. 553, 109 S.E. 810; *Bailey v. Transfer Co.,* 135 W.Va. 730, 65 S.E. 2d 82. However, this deals with the proof pertaining to the injury being of a permanent nature. In this case there is ample proof of the permanent injuries suffered by the plaintiff. This is clearly shown in the evidence with regard to the fracture and displacement of the pelvis, fractures of four vertebrae, severe cuts and long scars on the legs or knees. Therefore, the giving of plaintiff's Instruction No. 5 does not constitute reversible error.

For the foregoing reasons, the judgments of the Court of Common Pleas of Kanawha County and the Circuit Court of Kanawha County, are affirmed.

*Affirmed.*

CALHOUN, JUDGE, concurring:

While I concur in the result reached in the decision of this case, I am unable to agree that the trial court properly admitted, over objection, that portion of the testimony of Frank K. Hereford, in which the witness summarized the narrative statement made to him by Jerry Lawrence concerning the facts leading up to and including the prior collision of the motor vehicles.

The testimony discloses that Jerry Lawrence is the husband of the plaintiff; that he was the driver of the vehicle in which she was a passenger at the time she sustained her injuries; and that he also has an action pending against the defendant to recover for damage caused to his automobile and for medical bills incurred in behalf of his wife as a consequence of the accident involved in the instant case.

The following questions propounded to Frank K. Hereford and the following answers given by him fairly disclose the nature of the testimony thus admitted over objection:

"Q. Mr. Hereford, do you know how soon after the wreck had occurred that you came upon the scene?

150

"A. No, sir.

"Q. Can you describe the scene as you arrived there?

"A. Yes, sir. I felt I got there rather quickly after it had happened because there was dust settling around the cars and there was steam coming from one or both of the cars and they were close together. When I got there there wasn't anyone else there.

\* \* \*

"Q. All right. Who was present at the scene when you arrived there?

"A. At first I saw the cars and then I saw a young man, let's see, just about on the concrete where it meets the asphalt berm, and he was in motion and I am pretty sure he was waving to stop me, but I had already seen the cars and was beginning to stop and then I guess as I passed that young man I realized there was a body lying on the road and when I got my car parked and put my blinker lights on to try to stop other cars, I walked back and there was a young woman lying there on the road.

\* \* \*

"Q. And was the young man you first saw Mr. Jerry Lawrence, her husband?

"A. It was.

"Q. What, if anything, did Jerry Lawrence tell you then?

"A. For a while he was quite excited and for the first few minutes he urged me to get my car and drive on and get an ambulance. That was what he was most insistent about but I wouldn't do that and later on I asked him what happened.

\* \* \*

"Q. By 'later on' what do you mean?

"A. Somewhere from two to five minutes.

\* \* \*

"Q. And was the statement which he made to you then a part of the same conversation which you started with him in which he asked you to go on and move your car?

\* \* \*

"The Witness: I might have difficulty in answer-

ing. It was a running conversation. The young man and I talked steadily for some two to four minutes until another car came along to stop. If it please all of you gentlemen, I was in fear of this young woman's life because she was lying there on the concrete and I was trying to get other cars to stop, to use their lights to stop other traffic so that she wouldn't get hit. I had a running conversation with the young Lawrence boy for the duration of two to four minutes.

"Q. And during that conversation which lasted as you say from two to four minutes, did Mr. Lawrence tell you about how the wreck occurred?

*   *   *

"The Witness: A. Yes, sir.

"Q. What did he tell you, Mr. Hereford?

"A. I first asked him to give me the name and telephone number of his mother so that I could notify her and then I asked him what happened and he told me.

"Q. What did he tell you?

"A. He told me he was going south on the Turnpike up the river that a car approaching him going down the river failed to make the—or was not making the curve there on the Turnpike and that he, realizing that that car was going to strike him, cut his wheels hard to the left to try to go around him on the other side and that as he did so this car approaching him cut his wheels hard to the right and that they collided."

Whether the narrative statement, on the question of its admissibility, be tested on the basis of the rather indefinite and confusing doctrine of *res gestae,* or upon the more narrow rule relating to spontaneous utterances, in either event the verbal declaration must meet the test of spontaneity. "But spontaneity rather than contemporaneity is now the generally recognized test of admissibility." *Collins v. Equitable Life Ins. Co.,* 122 W. Va. 171, 173, 8 S. E. 2d 825, 826. The basis of the doctrine is, of course, that the spontaneous, impulsive, almost involuntary nature of the utterance supplies the essential guaranty of trustworthiness. Such utterances are admitted only when the declar-

152

ant is "under such stress of emotion or excitement as to render the declarations spontaneous to the point of being almost involuntary, precluding the reflection that gives rise to falsehood." *Reynolds v. W. T. Grant Co.*, 117 W. Va. 615, 620, 186 S. E. 603, 605.

Reflection is the very antithesis of spontaneity. Innate in an extended narrative of a past event on a question and answer basis is the element of reflection. From this we derive the well-settled proposition that if the declaration or statement is a mere narrative of a past event, such declaration or statement may not be admitted under the rule of evidence now under consideration. Accordingly, in the early case of *Corder v. Talbott*, 14 W. Va. 277, the Court, in the third point of the syllabus, stated: "When the declarations are *merely* a narrative of a past occurrence, though made ever so soon after the occurrence, they ought not to be received in evidence, they being in such case no part of the *res gestae.*" The same principle, which is believed to represent a quite general rule, has been recognized in *Hawker v. The B. & O. R. R. Co.*, 15 W. Va. 628, 637; *Williams v. Belmont Coal & Coke Co.*, 55 W. Va. 84, 97-98, 46 S. E. 802, 807; *State v. Woodrow*, 58 W. Va. 527, 534, 52 S. E. 545, 548; *Depue Adm'r v. Steber*, 89 W. Va. 78, 82-83, 108 S. E. 590, 591-592; *Collins v. Equitable Life Ins. Co.*, 122 W. Va. 171, 174, 8 S. E. 2d 825, 826.

The necessity of the element of spontaneity is fully recognized in the prior decisions of this Court cited in the opinion in support of the holding that this testimony was properly admitted by the trial court. Such necessary element of spontaneity is likewise recognized in the fourth point of the syllabus of the opinion.

The statement attributed by the witness to Jerry Lawrence "was a running conversaton", on a question and answer basis, an extended "conversation" lasting "some two to four minutes", as distinguished from a spontaneous utterance. Though, for reasons

stated in the opinion, a decision of this question was unnecessary to a decision of the case, I fear that the Court's opinion may be regarded as a precedent for an unwarranted application of the rule of evidence. I, therefore, undertake herein briefly to state my position.

I concur in the result, nevertheless, because that which I conceive to have been error was rendered harmless by the testimony of Jerry Lawrence under oath in open court and by the introduction in evidence, without objection, of the written statement taken from him by the investigating officer.